**FALKENBERG v. GOLDING et al.**

No. 10482.

United States Court of Appeals
Seventh Circuit.

March 26, 1952.

The defendants seeking reversal here urge, that, in view of certain prior art not included in the record in the prior case, the patent should now be held invalid. This determination, defendants suggest, should be made in the public interest. They contend further that if we do not find it necessary to reconsider the question of validity, we should, in the light of the newly cited prior art and the limitations imposed by the patentee himself upon his claims in the proceedings before the Patent Office, find the invention to be so narrow as to exclude any similar device, unless it includes the specific elements of Falkenberg, and, that when the claims are properly so limited, the accused devices are far removed from the patented device and, therefore, do not infringe. Obviously our determination of infringement in the prior case is no adjudication of that issue as related to defendants' devices. Furthermore, irrespective of whether we consider anew the question of validity, it is, we think, requisite that we examine into and establish the proper scope to be given the invention and determine whether, when that range has been properly defined, defendants' devices are within it.

Max W. Zabel, Edward U. Dithmar, Albert I. Kegan, Samuel W. Kipnis, all of Chicago, Ill., for appellant.

Albert R. Teare, George W. Saywell, Cleveland, Ohio, Arthur A. Olson, Chicago, Ill., Bates, Teare & McBean, Cleveland, Ohio, Thiess, Olson & Mecklenburger, Chicago, Ill., for plaintiff-appellee.

Before KERNER, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit charging defendants with infringement of Claims 14 and 15 of his Patent No. 2,409,425 for "Drapery Mounting," issued October 15, 1946, having resulted in a judgment decreeing the claims valid and infringed, defendants appeal. In Falkenberg v. Bernard Edward Co., 7 Cir., 175 F.2d 427, we held the claims valid and infringed by the device of the defendant then before the court. A full explanation of the details and nature of the patent is included in our opinion in that case.

In his application, plaintiff stated that his "drapery mounting" is a "hanger" which provides means whereby an inexperienced person can conveniently hang on windows or doors draperies or valances and secure a tailored ornamental effect usually achievable only by those possessing professional skill. Each of these hangers, the patentee prescribes, must be affixed to a bracket provided at the two upper corners of a window. From the brackets he suspends the hangers, inclining them in an angular direction toward each other and toward the center of the window, at an angle of 30 to 45 degrees from horizontal. The claims, we think, are limited, so far as inventive character is involved, to the hanger and the specific form in which it is built. Windows, brackets, draperies and the art of hanging draperies so that they will make graceful sweeps or cascades are all old. As his specifications indicate, what plaintiff was providing was a hanger attached to an old bracket and so constructed as to support the draperies and permit their facile manual

graceful arrangement. To determine just what he did in this respect requires further inquiry.

Claim 1, not in issue, defines the hanger simply thus: "A drapery mounting comprising a body member having spaced slots intersecting an edge thereof, and pockets formed in the body into which the slots open." Claims 14 and 15 are more specific. In each the patentee disclosed a pair of hangers secured to brackets and inclined toward each other from opposite upper corners of the window. In Claim 14 the hanger is described as a body "having a succession of spaced slots intersecting the periphery thereof and forming passages for successively folded portions of the drapery material, the body being further formed with chambers which are continuations of the respective slots and provide for adjustable takeup of the drapery material, the body being formed with an extension serving to support the material exteriorly of the body proper." Claim 15 is essentially the same; instead of pockets, it speaks of chambers, but, as used in the two claims, the two words mean the same. Thus the patented device includes a body, i. e., a rectangular piece of wood, metal or plastic material, along the upper edge of which are spaced slots which constitute passages into pockets or chambers within the hanger, permitting the folds of the draperies to be inserted manually in and through the slots into the pockets. Thus, when the drapery extends horizontally across the top of the window and then vertically down either side from the hangers, its folds are gathered into the various slots and pockets on either side, and form, at the top, a "sweep" and at the window's sides, "cascades." Throughout his patent plaintiff speaks of the hanger as consisting of a body, slots and pockets. He suggests no other device.

In the proceedings before the Patent Office certain claims were rejected. Invalidity was suggested on Harper, as "the old combination of a valance device and a window frame or support therefor." There were rejections also because of Berglund No. 1,746,577. Protesting, the applicant urged that Berglund discloses a bracket, preferably a metal strap, possessing resiliency "bent into a formation somewhat simulating the slot and pocket areas formed in the body member of applicant's mounting," but "no structure in which slots or pockets are formed." Berglund's strap, said Falkenberg, is bent in loops so as to form a series of spaced pockets, each one of the series being relatively adjustable, by reason of the elasticity of the strap, to form spaces which serve as entrances through which "to pass the fabric into the other series of pockets and then the separated strap portions clasp and hold the fabric when the strap is relieved." He said that "by reason of these distinctions, the Berglund disclosure forms no adequate anticipation of applicant's claims."

Later in the course of the proceedings, the applicant referred to his "novel formation of mounting, having an edge thereof intersected by a plurality of spaced slots, and having an end extension from the edge opposite to that in which the slots are formed also formed with a slot opening in the general direction of the plurality of slots." He distinguished Harper by saying that the latter, in contrast, had sliding parts between which the fabric might be clamped; that Ladd, who had also been cited, disclosed no hanger having a plurality of spaced slots or a body member having pockets. He also distinguished the earlier Kuhnel. As to Berglund, he referred to what he had previously submitted in that respect and added "Berglund discloses no slots, except that a slot may be temporarily formed between adjacent loops of his resilient strap by pulling them apart and inserting the fabric there between. The fact that Berglund may temporarily warp his structure in this manner to apply the fabric does not meet a construction defined as a body member having a plurality of spaced slots." He said further that "Berglund discloses pockets but access to them is not obtainable by spaced slots but only by pulling adjacent resilient members apart to afford an opening into which material may be passed and then clasped and retained by a release of the resilient members." In view of these self-imposed limitations, distinguishing the claims from the prior art

and limiting them to the exact construction specified, the application was allowed.

In his statements to the Patent Office, the applicant has said frankly that Berglund did not teach what he has accomplished and that, therefore, Berglund does not anticipate him; that what he has done is to be distinguished from Berglund in that he has prescribed slots running to pockets, which Berglund did not specify. Berglund's structure, according to the patentee himself, was not a body in the sense that Falkenberg used that term. It did not and could not have slots such as those of Falkenberg. It did not have pockets in the sense of Falkenberg's pockets. Consequently plaintiff's patent is limited to the specific construction prescribed in his application and expressly defined and claimed in the patent proceedings as a result of which the patent was allowed. It may not include a structure specifically disclaimed. An applicant may not, before the Patent Office, limit the use of the words in his claims narrowly to avoid the prior art and thus obtain allowance and then subsequently urge a broader construction and attribute to his words a meaning which he previously disclaimed in an effort to establish the claim. Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812 at page 815; Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., 2 Cir., 108 F.2d 695 at page 697.

Berglund prescribed a metal fixture which made use of the spring clip principle or, as he described it, possessing the inherent resilient properties of a springy material. This fixture consists of either one long strip of material arranged in loops fastened to the body of the fixture at spaced intervals or several separate springy loops spaced in such manner that in normal position each loop remains in contact with the next one and forms a smaller loop at the bottom. When a fabric is forced between the two larger loops into the smaller one, the springs, necessarily, must be distorted so as to spread apart and permit the material to enter; and, of course, when it has entered, the natural resiliency of the metal causes the loops to resume their normal position thus clamping the drapery. The patentee spoke of these loops as "curvate convolutions," each loop or finger being pressed against its adjacent finger. As Falkenberg himself said, each loop or finger is relatively "adjustable" by reasons of the elasticity of the strap"; the resiliency, as he said, causes the separated loops to clasp and hold the fabric after it is inserted. This, said Falkenberg, "forms no adequate anticipation of applicant's claims."

Defendants' devices, following Comerford et al. No. 2,524,426 October 3, 1950, and Golding No. 2,497,446 February 14, 1950, are, we think, equally far removed from the narrow scope of plaintiff's claims. The first, under Comerford, known as "Charmatic," is, to all intents and purposes of this case, the same as Berglund, with loops of resilient metal placed in series, each adjacent to another so as to press against the next one and furnish enough resiliency to allow fabrics to be inserted when the loops are distorted and then to resume their normal position, clamping it. This is not the body with slots and pockets to which Falkenberg's claims must be limited, anymore than is Berglund's, which he distinguished. The device manufactured under Golding known as "Swag-sta" is, we think, the equivalent of Berglund and of "Charmatic." It, too, is of resilient metal construction, utilizing the spring clip principle. It consists of multiple hairpin shaped spring fingers, one prong of each of which is anchored in a plate and the other of which is left free to move back and forth with reference to the anchored prong. Each of these hairpin fingers is pressed against the one next adjacent. When a fabric is forced between them, the fingers are forced out of their normal position so as to receive the material. After the fabric has been thus inserted, the wire fingers will tend to resume their normal position and clamp the material. In other words, neither is a device differing from that of Berglund, employing a series of resilient loop fingers to hold draperies, the very device which Falkenberg told the Patent Office did not teach what he taught and did not anticipate what he claimed.

Nor do we think that the fact that Falkenberg placed his hangers at an angle,

that is, inclined toward each other from opposite corners of the window, of itself reflects novelty. That idea was old; it is shown in the prior art cited in this record, the patent to Thoms No. 2,199,717 May 7, 1940.

In the same connection, we are convinced that the idea of an extension, in which a long slot is provided supplying means whereby the window frame is concealed is old, if not obvious. The bracket, making possible the extension of the hanger beyond the window into room, permitting concealment of the frame, is old.

■ By our decision we eliminate any necessity of determining whether the findings of fact of the District Court, including invention, are clearly erroneous, for our conclusions are based upon the interpretation of written documents and the construction of undisputed statements of the patentee before the Patent Office, matters open to us for consideration. Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794 at page 802; Lewyt Corporation v. Health-Mor, Inc., 7 Cir., 181 F.2d 855 at page 857; Sales Affiliates, Inc. v. National Mineral Co., 7 Cir., 172 F.2d 608 at page 613.

■ Our decision in the prior case that the defendant's device infringed is no precedent for a similar decision here, for there the accused hanger was constructed with slots and pockets as taught by Falkenberg. Here they are not. We said then that the defendant had copied Falkenberg. Here, on plaintiff's own statement to the Patent Office, defendants employ different elements. Such is the difference between the device found to infringe in the prior case and the hangers of defendants in this case.

It is forcibly argued that, in view of the additional prior art pleaded, we should now hold Falkenberg's claims invalid. We think it is not necessary to go so far, in view of our conclusion that plaintiff has so limited his claims and so distingushed them from the older art that, thus limited, they do not cover the devices manufactured by defendants, which are in essence the devices of the prior art.

The judgment is reversed with directions to dismiss the complaint.