AGHNIDES v. GOODRIE et al.
No. 10910.

United States Court of Appeals,
Seventh Circuit.

Feb. 24, 1954.

Rehearing Denied March 31, 1954.

---

Albert L. Ely, Bernard C. Frye, Akron, Ohio, John Rex Allen, Bradford Wiles, Chicago, Ill., Everett R. Hamilton, Akron, Ohio (Ely, Frye & Hamilton, Akron, Ohio, Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., of counsel), for appellant.

George N. Hibben, Chicago, Ill., Albert J. Fihe, Burbank, Cal., for appellees.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit for infringement of his patent 2,210,846, applied for in the United States December 31, 1937, and in Belgium December 8, 1934, and allowed August 6, 1940, having resulted in a judgment of invalidity and dismissal of the action, he brings this appeal.

The device of the patent is not complicated in structure or operation. The inventor described it as a "fluid mixing device," "for intimately mixing a gas with a fluid." Apparently the only practical use experienced has been in mixing air and water, or "aerating water." Claim 1 which is typical of all, five in number, appears in the footnote.[1] It is clear that the patentee's conception envisaged an attachment for a water tap from which water flows under pressure and enters the contrivance at the top, passes through an aperture or apertures or a screen near the top thereof thus dividing and separating the stream as it continues into a mixing chamber, into which incoming air enters through air ports leading into the chamber, thus mingling the air with the rushing water. The mixture of air and water then continues to the outlet, passing over barriers or screens, thus causing to flow from the outlet into the kitchen sink or other receptacle an aerated stream of water, which falls in what is called a "coherent" stream whitish in color, due to the added air, without splashing or spattering. It is said also that such aerated water lends itself more readily to the efficient use of soap. Thus the housewife finds the "mixer" or "aerator" helpful in her housework. The whole idea then embraces water under pressure flowing from an open faucet into a chamber after it has been divided by a screen, then subjected to added air, plus a further breaking up, after the air has been added, by another screen or barriers and then released. The application, as plaintiff admits, had "a stormy time in

---

[1]. A device for producing a coherent jet of water containing air bubbles, comprising a chamber, the inlet end of which is adapted for connection with the discharge end of a tube containing water under pressure and the outlet end of which is adapted to discharge the said coherent jet, a diaphragm at the upstream end of the chamber having at least one orifice through which the stream of water is adapted to be forced into the chamber with substantial velocity, an air port opening into the chamber through which air is induced by the stream of water, and means, in the path of the stream of water after it leaves the orifice and before it discharges at the outlet end, for finely breaking up the water and for offering sufficient resistance for thoroughly mixing it with air and for thereafter uniting the aerated water to form a coherent jet having small bubbles disseminated throughout the jet.

the Patent Office" and was first denied on various references, but eventually allowed by the Board of Appeals.

The District Judge heard the testimony of the plaintiff, his expert and Mr. Goodrie, one of the defendants, received certain documentary evidence and observed certain tests of the patented, the allegedly infringing and other devices in open court, participated in by both parties. He had before him evidence bearing upon alleged commercial success and various references to the prior art. At the conclusion of the trial, he took the cause under advisement, giving the parties the privilege of filing written briefs and argument, the time for filing which was extended at various times. Finally, when they were all in, the judge, on November 3, 1952, announced his decision, saying: "In my opinion the Aghnides patent Number 2,210,846 upon which plaintiff relies in this case is anticipated by British patents Number 6012 of 1909 and 405316 of 1933 and is therefore invalid. Counsel may prepare findings of fact and conclusions of law and submit them to Casper W. Ooms as Special Master in this case for the purpose of passing on such findings and conclusions."

Following the Special Master's report on March 20, 1953, the court entered formal findings and conclusions, in which, after discussing the details of the patent, pointing out the salient elements of the prior art and describing the tests performed in open court, it found that all the elements of Aghnides were old in the art in the Felten British patent No. 6012 of 1909, its counterpart, No. 1090044 to Fuss 1914, and Solomon British patent No. 405,316 of 1933; that Aghnides' assembly of old elements performs no new or additional function, and achieves no new or unusual or surprising result but that the devices of the prior patents to Solomon and Felten achieved substantially the same results and that to produce the disclosure of the patent required no invention. The court concluded that the claims were anticipated by Felten and Solomon and were invalid because of such anticipation and because of lack of invention.

At the outset we are met with plaintiff's contention that the findings are not entitled to the proverbial weight to be given trial court findings under Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. He attacks only those heretofore summarized, insisting that they were proposed by the Master, who, though he had examined the oral and documentary evidence, did not see the tests performed in open court and that they were therefore wrongfully adopted by the court, after a protracted interval had intervened between the conclusion of the trial and the date of the entry of the findings. He argues that the court had forgotten the facts, and merely accepted the Master's proposals, which did not take into consideration the tests which the court had observed.

At the conclusion of the trial, November 15, 1951, both parties waived oral argument. After various extensions of time, plaintiff filed its brief and argument on May 22, 1952; thereafter defendants filed their brief and argument and plaintiff filed his reply brief. In September, 1952, Judge Holly suggested that, as he had been ill during the summer and unable to work on his decision, perhaps the parties would desire to have the case assigned to another judge. Counsel for both parties consulted and agreed that the case should remain with Judge Holly for decision. Consequently, with the consent of both parties, Judge Holly retained the case and finally, on November 2, 1952, entered the findings hereinbefore summarized that the patent in suit was anticipated and was invalid. At the same time he directed that both parties submit suggested formal findings to Casper W. Ooms, an erudite and experienced patent attorney and former Commissioner of Patents, as Special Master, to be considered by him. The formal findings and conclusions and judgment dismissing the suit were entered March 20, 1953. Denying a mo-

tion for new trial on April 10, 1953, the court said that the findings were not affected by his illness in the summer of 1952 and that the motion for a rehearing was without merit.

The Master reported that there had been a dispute before him only as to findings 9 and 13 inclusive; that he had examined the evidence and that the findings suggested were based thereon and not upon the tests in open court and that he submitted them for such action as the court might consider proper upon the whole record. The Master did not make findings on the merits but explicitly stated that it was up to the court to do so, based upon the record and the court's knowledge of what had transpired at the trial. Of course, when the court entered the findings, they became its findings and not those of the Master; the latter's report was merely advisory; the court made the final determination. Furthermore the formal findings adopted were in strict conformity with the court's decision before it asked the parties to suggest more formal findings and conclusions.

■ Under these circumstances, we find no justification for lending to the trial court's findings any less weight than we normally do under Rule 52(a). Consequently our question is the usual one of whether there is adequate evidence to support them. Such cases as Sales Affiliates v. National Mineral Co., 7 Cir., 172 F.2d 608; Falkenberg v. Golding, 7 Cir., 195 F.2d 482, 483 and Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, decided by this court, wherein we were dealing with records made up of documentary evidence, which we were as capable of interpreting as was the district court are not applicable here. The present case comes more clearly within our decision in National Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 184 F.2d 612, at page 615, where we said:

"In view of the fact that the court, having seen the devices demonstrated and heard the witnesses,

expert and otherwise, of each of the parties, having their conflicting testimony before it, made a finding which has adequate substantiation in the record, under the federal rules of procedure, we have no right to interfere. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672; Hazeltine Research, Inc. v. Admiral Corp., 7 Cir., 183 F.2d 953."

We, too, have had the benefit of tests in open court at the time of the argument before us. We, too, have the transcript of the oral and documentary evidence. After careful consideration of all that has been presented, we think the trial court was amply justified in entering the findings and conclusions of which complaint is made. Indeed, we are of the opinion that any determination to the contrary would have been erroneous.

■ Felten is prior art. He designated his invention as "improvements in or relating to Mixing Devices" and as a "Mixing device for producing * * * mixtures from a gas or vapor like substance and a liquid substance," and an "apparatus for mixing gases with fluids." The patent in suit uses similar language. "This invention relates to a device for intimately mixing a gas with a liquid." Felten introduced ozone into water under pressure and mixed them. Aghnides introduced air into water under pressure and mixed them. Each called his process one for mixing a gas with a fluid. Felten reads literally on the claims of Aghnides. An asserted difference is that the mixing chamber of Aghnides is larger than that of Felten, but that, so far as the tests and the evidence shows, is not an inventive difference. Then, too, plaintiff insists that the air vent of Felten introducing air into the mixing chamber does not in fact lead into the chamber but only into the top thereof, thus weakening the mixing effect. Yet in both Felten and Aghnides, the vent enters

the chamber just below the diaphragm, which in turn, is just below the intake for the water. Felten as well as Aghnides brings the gas into the mixing chamber. If in practice, it has proved desirable to introduce the gas at a point lower than that indicated by either, that lower placement cannot amount to invention. The important thing is that each introduces a vapor, a gas, ozone or air, into moving water in order to mix the two substances. It seems to us utterly immaterial that Felten's apparatus may also be used as a vacuum pump; so indeed may one form of Aghnides. Element for element, the two are the same. In tests the two accomplish the same results, though perhaps not with equal efficiency. We conclude then that the trial court rightfully found that Felten anticipated Aghnides and taught the latter all that he needed to know in order to build his mixer of gas and fluid, i. e., air and water.

We think it unnecessary to prolong this opinion by detailed discussion of other prior art. Suffice it to say that in our opinion, after carefully examining it, the teachings of the other patents in evidence were such that, with them before him, Aghnides did not achieve invention.

If for the moment we indulge the presumption of validity, we think Aghnides' claims must be very narrowly construed and limited to the specific structure disclosed by him. Consequently, defendants, who do not employ the same structure, but prescribe a different means for separating the incoming water into jets, does not infringe.

We conclude that Aghnides was anticipated; that, if not fully anticipated, the prior art, of which he was bound to take notice, was such that any skilled delver in the art of mixing gases and fluids could have built Aghnides' device,—in other words, that he did not achieve invention but accomplished the result of a skilled mechanic.

In view of our conclusions we consider it unnecessary to extend this discussion to other points urged by the respective parties.

The judgment is affirmed.