HELMS PRODUCTS, Inc., Plaintiff-Appellee,

v.

LAKE SHORE MANUFACTURING COMPANY, Inc., Defendant-Appellant.

No. 11407.

United States Court of Appeals Seventh Circuit.

Dec. 1, 1955.

I. Irving Silverman, Myron C. Cass, Chicago, Ill., for defendant-appellant.

Frank E. Liverance, Jr., Grand Rapids, Mich., Edward J. Wendrow, Winston, Strawn, Black & Towner, Chicago, Ill., for plaintiff-appellee.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This action for infringement of its United States Letters Patent No. 2,637,-132 was brought by the plaintiff, Helms Products, Inc., against the defendant, Lake Shore Manufacturing Company, Inc. The plaintiff charged infringement only of Claim 1 of the patent. The defendant contended that the patent was invalid and that defendant's product did not infringe.

The issues raised by the complaint and answer were referred generally to Special Master in Chancery Manuel E. Cowen for hearing, with directions that he report his findings of fact and conclusions of law thereon to the District Court. At

the conclusion of the hearing the master found facts from which he concluded that Claim 1 of the plaintiff's patent for a transparency viewer, sometimes referred to as an "illuminated picture frame," was valid and had been infringed by the defendant. The District Court approved the findings and conclusions of the special master and accordingly entered judgment for the plaintiff.

The defendant first contends that Claim 1 of the plaintiff's patent is invalid because new matter was added to the original application while it was pending in the Patent Office. The defendant insists that after the original application was denied by the Patent Office the application was changed by describing the elongated fixtures which held the picture in place as being "detachably connected" instead of "permanently connected" as they were described in the original application.

As to this contention the plaintiff points out that the original Claim 6 recited " * * * means at the front open side of the frame for releasably securing a pictorial transparency across said frame front * * *." This description necessarily called for fixtures which were "detachably connected" rather than "permanently secured." The plaintiff also directs our attention to the fact that drawings of its patent which were submitted with the original application indicate that the fixtures were removable; that if this were not true the drawings would indicate that the fixtures had been spot welded or riveted to the frame.

The defendant also accuses the plaintiff of inserting new matter in the application by amending the application by the insertion of a more detailed description of the manner in which the picture is mounted in the frame.

The plaintiff admits that the insertion of new matter is contrary to a strict rule of the Patent Office which states that any changes made after the application is filed must correspond to either the drawings or the specifications as filed. The purpose of the rule is to enforce the requirements of 35 U.S.C.A. § 132 which provides that: " * * * No amendment shall introduce new matter into the disclosure of the invention." The plaintiff insists, however, as shown above, that the changes made in the application for its patent not only correspond to the drawings but also correspond to a feature of the invention as defined in Claim 6 of the original application.

The fact that the Patent Office granted the patent in suit necessarily means that it did not consider the amendments to the application as "new matter" within the meaning of its rules or of the Act. Since the Patent Office is constantly determining and defining what is or what is not new matter, its ruling on such questions is entitled to special weight. General Electric Co. v. Cooper Hewitt Electric Co., 6 Cir., 249 F. 61. Amendments to specifications for the purpose of clarity and definiteness are permissible. H. H. Robertson v. Klauer Mfg. Co., 8 Cir., 98 F.2d 150, 152–153. We think the amendments made in the instant case were of that type. We certainly cannot say that the action of the District Court approving the determination of the Patent Office was clearly erroneous.

The defendant also attacks the validity of Claim 1 of plaintiff's patent as not constituting invention over the prior art. Claim 1 of the patent in suit reads as follows:

"1. An open frame having sides and ends, a flexible transparency extending across the opening of said frame and overlapping the sides and ends thereof, elongated fixtures detachably connected to the frame, one at each of the sides and ends of said opening and slidably embracing the edges of the transparency, and yielding resisting tension members connected to said transparency at corners thereof and also bearing against the end portions of adjacent fixtures at said corners, said tension members being under strain de-

formation and having inherent force therefrom acting to pull said transparency outwardly at each corner and to press said fixtures inwardly."

Prior to this patent illuminated pictures were framed by making a sandwich of two plates of glass with a transparent pictorial sheet between them, and then mounting the plates of glass thus combined with the transparent pictorial sheet into a frame. Such pictures were unsatisfactory because the glass was brittle and easily broken and because the transparent pictorial sheet under changing temperatures and atmospheric conditions expanded and contracted and thereby became wrinkled and unsightly.

The method for overcoming the disadvantages of framing these illuminated pictures was in part described in the specifications of plaintiff's patent as being:

"* * * A transparency carrying pictorial and other representations on thin material, stretched taut and supported in front of properly located lighting means, has the pictorial and other representations presented to best advantage. With our invention, a framed picture is provided, illuminated at the back with the light passing, either directly or by reflection, through the transparency, presenting the picture far better than the ordinary picture or the like is presented when merely framed and viewed from the front with only exterior lighting directed against it."

In its brief the plaintiff further explains the advantages of its invention as follows:

"* * * Under differing conditions of temperature, vapor or lack of it in the air, etc., the transparency sheet shrinks or expands. The springs pulling on the transparency yield so that the pictorial or other transparency may shrink to smaller size, yet be held unharmed, smooth and taut. Reversely, when it expands, the springs, tending to return to their normal condition, hooked onto the corners of the transparency, continue to pull thereon with their inherent forces and maintain the transparency smooth and taut. The edge portions of the transparency covered and embraced by the elongated fixtures (third element of the claim) shrink and expand, there being sufficient freedom of movement of them under the fixtures to permit shrinking or expansion. The transparency, accordingly, does not bulge, or 'belly out', under expansion and does not rupture on contraction, as would happen if the edge portions of the transparency were so positively clamped against the sides and ends of the frame that no movement could take place."

On the issue of Claim 1 of plaintiff's patent over the prior art we must start with the presumption of validity which arises from the grant of the patent—a presumption which must be overcome by one who asserts invalidity. "Even for the purpose of a controversy with strangers, there is a presumption of validity, a presumption not to be overthrown except by clear and cogent evidence." Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 2, 55 S.Ct. 928, 929, 79 L.Ed. 163; Artmoore Company v. Dayless Mfg. Company, 7 Cir., 208 F.2d 1, 3.

The defendant here insists that by reason of the manner in which this patent was presented to the Patent Office, the attention of that office was directed away from pertinent prior art patents and, therefore, there is no presumption that such prior patents were considered by the Patent Office and were found not to constitute prior art to the patent in suit. It is true that the three patents on which the defendant principally relies were not cited by the Patent Office, but as this court said in Artmoore Company v. Dayless Mfg. Company, 7 Cir., 208 F 2d 1, 4, "* * * it is as reasonable to

conclude that a prior art patent not cited was considered and cast aside because not pertinent, as to conclude that it was inadvertently overlooked. [Citing cases.]"

In the District Court the defendant insisted that plaintiff's structure did not disclose invention but amounted to merely putting together certain old patents known to the public and in public use more than one year prior to the date of plaintiff's application for its patent. In support of this contention the defendant especially relied on the Truelock patent, No. 2,197,489, the Julien patent, No. 2,-173,334, and the Smith patent, No. 2,-379,499.

The Truelock patent was for a type of safety screen guard adapted for use in asylums and hospitals, and was to take the place of bars across the windows of such institutions. The screen described in that patent provided for a plurality of spaced shock-absorbers around the outer edge portion of the screen to prevent its being broken in the event that patients hurled themselves against it.

The Julien patent was also related to window screens for buildings and had for its object keeping out dirt and insects and keeping the screen taut. The specifications in that patent also indicated the advantages of that screen in psychiatric hospitals and asylums to prevent inmates from tampering with the screen.

The Smith patent related to projection screens and "to a novel arrangement for supporting plastic sheets employed as projection screens and the like.". The inventor, Smith, in this patent claimed as his invention:

"A picture projection screen and mounting therefor, comprising a quadrilateral frame, a plastic sheet of substantially the same configuration mounted in said frame, and means for attaching said plastic sheet to said frame, said means comprising a plurality of springs on each side of said sheet for exerting pulls of different force on said sheet in a radial direction from the center of said sheet, the springs being adapted to exert progressively increased pulls from the center of each side of said sheet towards the corners thereof."

The District Court, on the basis of the findings and conclusions of the special master who heard the case, determined that the patent in suit was a good and valid patent. The special master found and concluded that none of the above described prior patents constituted prior art as to the invention described by plaintiff's patent; that the inventions described in those three patents were entirely disconnected with the purposes of the plaintiff's patent and did not have any substantial connection with the plaintiff's patent—"their objects and purposes were too remote." The special master therefore found and concluded, contrary to the claim of the defendant, that the plaintiff's patent did not emerge from these three patents nor from any of the other prior patents cited by the defendant.

The defendant also insisted in the District Court that plaintiff's patent presented nothing new; that it was merely a combination of old ideas and was not sufficient to constitute a new invention. But as this court said in Lewyt Corporation v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, 858, " * * * a novel combination of old elements which so cooperate as to produce a new and useful result or a substantial increase in efficiency is patentable."

The special master found and concluded that the plaintiff's invention "has produced a new and useful result; that it does not consist of merely taking several old patents and putting them together"; that plaintiff's invention has "produced something new and useful, by a combination of the various elements mentioned in the plaintiff's claim"; and that "the combination of frame and elongated fixtures and springs have been combined by plaintiff into a new. invention which serves the purpose of an effective transparent picture by which a ten-

sion of the picture sheet is secured." The special master further concluded that plaintiff's invention "serves a useful purpose in that pictures can now be illuminated and tensioned without light fixtures being attached in front, as was the custom for many years prior to plaintiff's invention."

■ The fact that the above findings of fact and conclusions were first made by the special master is not significant. These findings and conclusions were adopted by the District Court and thereby became the findings and conclusions of that court and as such come within Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that such findings " * * * shall not be set aside unless clearly erroneous * * *." *Aghnides v. Goodrie,* 7 Cir., 210 F.2d 859, 862.

■ After a careful study of this entire record we cannot say that the finding of the District Court that the plaintiff's illuminated picture frame constituted invention was clearly erroneous. The defendant here seeks to avoid the effect of Rule 52(a) by insisting that the District Court in arriving at its finding of invention applied incorrect criteria of invention. On this point the defendant relies strongly on *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, in which the Supreme Court said, at page 149, 71 S.Ct. 127, at page 129, 95 L.Ed. 162: "Since the courts below perceived invention only in an extension of the counter, we must first determine whether they were right in so doing. We think not." On page 150 of 340 U.S., on page 129 of 71 S.Ct., the Court said further: "We need not go so far as to say that invention never can reside in mere change of dimensions of an old device, but certainly it cannot be found in mere elongation of a merchant's counter—a contrivance which, time out of mind, has been of whatever length suited the merchant's needs." The Supreme Court reversed the judgment in that case because there the whole of the known elements when joined together did not exceed the results attained by the sum of its parts. The majority of the court there considered the finding of invention by the trial court a finding of fact, but considered the finding clearly erroneous when considered in the light of the facts of that case. The Court there was careful to point out, 340 U.S. at pages 153–154, 71 S.Ct. at page 131, that "We set aside no finding of fact as to invention, for none has been made except as to the extension of the counter, which cannot stand as a matter of law."

The appellant in the instant case especially directs the attention of this court to a concurring opinion in the A. & P. case in which the patent there in question was described as "flimsy," "incredible" and "spurious." To illustrate what was meant by these descriptive words the concurring opinion cited patents covering placing rubber caps on wooden pencils to serve as erasers, making collars of parchment paper rather than linen, putting rollers on a machine to make it moveable, and placing rubber hand grips on bicycle handle bars. We cannot agree that plaintiff's patent falls within the category above described.

■ Finally, on the question of validity of plaintiff's patent, defendant claims that the report of the special master shows that the District Court used erroneous criteria of invention, in that the special master in finding plaintiff's patent valid quoted from *Foster v. T. L. Smith Co.,* 7 Cir., 244 F. 946, in which this court, in considering the question of validity of combination patents, said, page 952: " * * * if the idea of the patent in suit so obtruded itself from the prior art that the ordinary mechanic could not help from stumbling upon it, then of course no invention was involved." The defendant insists that this quotation demonstrates that the finding of invention by the District Court was grounded on an error of law and, therefore, cannot stand. The defendant argues that the Congress by enacting 35 U.S.C.A. § 103, "reversed" *Foster v. T. L. Smith Co.* The first sentence of the

cited statute provides that: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." This provision was approved and became a part of the patent law on July 19, 1952. But the Reviser's Note to this new provision points out that the Patent Office and the courts have been following this prescribed test of patentability for years. See also Stanley Works v. Rockwell Mfg. Co., 3 Cir., 203 F.2d 846, 849. While the quoted words from Foster v. T. L. Smith Co. are not the exact words used in the statute, we think the words used in the amendment to the Act described the same test for invention. An idea which would obtrude itself from the prior art would be "obvious" to the ordinary mechanic, and the ordinary mechanic is certainly descriptive of a person "having ordinary skill in the art to which said subject matter pertains." We think that the test used by the District Court is identical to the test prescribed by the Act as amended.

■ On the question of infringement we are also bound under Rule 52(a) of the Federal Rules of Civil Procedure by the finding of the District Court unless the record discloses that such finding is clearly erroneous. But on this question the report of the special master tells us that:

"One of the important elements that the Special Master considered in determining whether or not the defendants' accused structure substantially imitates the plaintiff's, is the fact that the defendant, Lake Shore Manufacturing Company, Inc., was formerly an exclusive agent of the plaintiff, Helms Products, Inc., in the States of Illinois, Indiana, Wisconsin and Iowa; defendant, Lake Shore Manufacturing Company, Inc., sold the plaintiff's patent, and had ample time to copy the patent and all of its elements, it being in a position to do so because defendant was the agent of plaintiff in the above four states, and sold and distributed its product in those states. Its knowledge of the patent was derived from this fact. * * "

■ The fact that the defendant had at one time acted as a sales agent for plaintiff furnishes no proper element to be considered in determining infringement. That question could only be determined by a comparison of the accused structure of the defendant with the structure described in the plaintiff's patent. In attempting to justify the consideration by the special master of the fact of the former relationship between the parties as an important element in determining the question of infringement, the plaintiff on page 42 of its brief states: "* * * the fact of his previous employment and position to obtain knowledge of the invention is a factor for the proper inferences which may come therefrom, namely, that the appropriation was deliberate and with a reckless disregard of possible consequences." The plaintiff does not there assert that infringement was one of the natural inferences to be drawn from the former relationship of the parties.

■ Since we have no way of knowing whether or not the master would have found infringement if he had not thought that the former relationship of the parties was an important element to be considered in determining that question, we have no alternative but to reverse that part of the judgment below which decrees infringement and provides remedies therefor. That part of the District Court's judgment which decrees that plaintiff's patent is a good and valid patent is affirmed. The cause is remanded for further proceedings consistent with the views expressed in this opinion.