**Elie P. AGHNIDES and Chase Brass and Copper Co., Inc., Plaintiffs,**

v.

**S. H. KRESS AND COMPANY, Defendant.**

**Civ. No. 857–G.**

United States District Court
M. D. North Carolina,
Greensboro Division.

May 4, 1956.

Albert L. Ely, E. R. Hamilton, Ely, Frye & Hamilton, Akron, Ohio, R. Morton Adams, T. F. Reddy, Jr., Pennie, Edmonds, Morton, Barrows & Taylor, New York City, Brooks, McLendon, Brim & Holderness, Greensboro, N. C., for plaintiffs.

Bair, Freeman & Molinare, Chicago, Ill., Block, Meyalnd & Lloyd, Greensboro, N. C., for defendant.

HAYES, District Judge.

This is a suit to restrain the defendant from infringement of Aghnides Patents Nos. 2210846 and 2316832 and for dam-

ages for infringement. The usual defenses are alleged.

Patent 2210846, hereafter referred to as '846, is the basic patent and 2316832, referred to later as '832, is for improvements on '846. The patents are concerned with, and constitute, an attachment to be fastened to a kitchen sink water tap, by a rubber device to slip over the tap or by screwing the metal device into the tap. This attachment is properly called an Aerator. The object of the basic patent was to receive into the aerator through a wire mesh water under pressure which would be divided into multiple droplets. As they emerged from the mesh, air from the outside would be drawn into the chamber from air ports or openings in the device. At the bottom of the chamber, meshes or screens would retard the water from immediately escaping through the outlet, thereby imprisoning multiple bubbles of air in the water bubbles, and by the proper arrangement of the outlet screens, cause the emerging stream to become coherent, soft and splashless. It seems incredible that so much could be accomplished with so small a device which is less than an inch in length and is virtually un-noticeable when affixed to the water tap.

'832 relates to alterations or additions to the basic patent which effect a better mixture of air and water and improve the whiteness, softness, coherence and anti-splash effect on the emerging stream.

■ This court had these same patents under consideration in an infringement suit by Aghnides v. Meyer's Co., D.C., 117 F.Supp. 839, in which it was decided that the patents were valid and infringed. Since that time, the Seventh Circuit Court of Appeals in Aghnides v. Goodrie, 210 F.2d 859, held '846 invalid; then again in Aghnides v. Holden, 226 F.2d 949 in which it held that its previous decision was not res adjudicata since the defendant was neither a party or privy to the first case. For the reasons and authorities cited in Aghnides v. Holden, supra, the previous determinations are not binding in the instant case be-

cause the defendant here was not a party to either of the cases.

■ The instant case has been fully and capably contested every step of the way throughout a lengthy trial at different intervals during 1955; and requests for extensive findings of fact and conclusions of law have been submitted by each side, together with excellent briefs in support of the requests. This court has made a most thorough examination of the evidence, the actual demonstrations of the patent devices and of the prior art and of the arguments of counsel. Due to the determination of the Seventh Circuit that '846 was invalid, this court felt constrained to follow it rather than its own determination in the Meyer's case if the evidence warranted it. However, with great deference, we are unable to agree and will set forth the reasons why we hold the patents valid and infringed.

There is no evidence which warrants the court in finding that such a device was in use or had been discovered which was designed or intended to aerate water in a kitchen water tap and to cause the emerging stream to be aerated water forming a soft and coherent stream which would not splash upon striking a dish or other object in the sink.

Such a device met a long felt need which is unmistakably established by the wide spread use of plaintiff's aerators. Since the granting of the basic patent of 1940, on application in Dec. 1935, more than 21 million have been made and sold by plaintiff's licensees.

Its universal acceptance by consumers eloquently establishes the novelty and satisfaction of previous need.

The means by which the device accomplishes the desired result had never before been brought together in a combination which remotely approached the solution of the problem which Aghnides solved so simply. The central portion of the little device is treated as a chamber. The stream of water from a faucet under ordinary pressure is split into multiple units by the insertion of a screen

or screens in the upper part of the device. There are openings or ports in the upper part of the device which permits air to be drawn into the chamber and in such a manner that water in no wise escapes through these openings, although the water is detained in the chamber where it envelops small air bubbles. This is accomplished by the insertion of a screen or screens at the outlet of the device in such a manner that the water remains in the chamber sufficiently to envelop air but not to escape out of the air ports, and these outlet screens are so adjusted in relation to the intake of air and water into the chamber that these multiple droplets of aerated water emerge in a coherent, soft, whitish and splashless stream.

It may be difficult for men to see any useful purpose or novelty here rising to the dignity of invention but it would never be hard for the housewife to see it unless she has an automatic dish washing machine.

It is difficult to ignore the valuation placed on the device in the commercial world. Business concerns are quick to discover and to acquire the rights to use gadgets and devices which give promise of commercial success. Why would reputable concerns like Chase Brass and Copper Co., Firestone Tire and Rubber Co., and Chicago Faucet Co. pay royalties to manufacture and sell 21 million of these aerators if they doubted the validity of the patents in suit.

The strongest evidence of validity is the actual demonstration of the device according to the claims of the patents and a similar demonstration of the prior paper patents. A close observance of the demonstrations leaves no lingering doubt here that both patents are valid.

■ In addition to the above, we cannot ignore that these patents did not emerge from the Patent Office until full consideration by the Board of Appeal. The members are experts in their field and their opinions are not only presumed to be proper but common sense likewise warrants giving great weight to their determination on patentability.

Against this array of evidence and the testimony of Aghnides, we have the paper patents cited by the defense and the testimony of its expert who is of counsel for the defendant and the three judges who of course only decided on the basis of the evidence in the record and demonstration before them.

Plaintiff's licensee, Chase Brass and Copper Co. Inc., now owner, makes an aerator under the patents in suit called "Spring-Flo", (Pl. Ex. 29), and Chicago Faucet Co. makes the "Soft-Flo" aerator, (Pl. Ex. 30) Firestone Tire and Rubber Co. makes "Velva-Flo" aerator (Pl. Ex. 31). An examination and test made before the court of defendant's Mel-O-Flo aerator, the accused device, (Pl. Ex. 18) and Exhibits 29, 30 and 31 and each embodies the structural features of Patent '846. The structural elements of the accused device in comparison with those of Aghnides is shown by plaintiff's Exhibit 33 which applies Claims 1 and 4 of '846 to the Mel-O-Flo aerator. Actual tests before the court clearly demonstrate that the results obtained by Mel-O-Flo are substantially the same as are obtained by Spring-Flo and Aghnides Fig. 4 (Pl. Ex. 28). Since aerated water emitting in the coherent splashless stream is the goal sought, it is interesting to note that the cubic inches of air added to each cubic inch of water are as follows:

| | |
|---|---|
| Spring-Flo | 6.0 |
| Aghnides Fig. 4 | 4.3 |
| Mel-O-Flo | 5.1 |

The same tests also show the vast difference between the above devices and the prior art. Felten, which is the nearest and strongest and the one relied on for invalidity in the Aghnides v. Goodrie, supra, furnishes only .7 inch of air to each cubic inch of water.

The accused device is an embodiment of Aghnides invention and utilizes substantially the same elements and the same mode of operations to accomplish the same result.

Defendant's Mel-O-Flo aerator has the second up stream diaphragm of Patent '832 and when used with the adaptor with

which it is sold embodies both the second upstream diaphragm and the restricted upstream orifice of Patent '832. The two charts (Pl. Exs. 35 and 37) applying Claims 2 and 4 of Aghnides '832 to the structural element of the Mel-O-Flo aerator show the correspondence of those structures to the elements of Aghnides claim. Mel-O-Flo embodies the Aghnides invention in Patent '832 and the same or equivalent element accomplish the same result in substantially the same way.

There was an utter lack of proof to show that any device existed prior to the Aghnides invention which embodied the combination of elements operating in accordance with his mode of operation and producing comparable results.

Felten as shown above did not produce aerated water. He did not seek that result. He was endeavoring to provide a vacuum pump. This necessitated the flooding of the chamber to create vacuum, the exact opposite of Aghnides Patents in suit. He did not obtain aerated water, nor a coherent, splashless stream. There is nothing in Felten to indicate he was concerned at all in these results. This applies to Aghnides 1,912,113, and to Fuss Patent 1,090,044.

Battersby British Patent No. 323,242 of 1929 and Solomon British Patent No. 405316 of 1934 are similar in that they produce a violent, splashing, divergent stream without the necessary aeration. They are clearly for a different purpose and operate on principles inapplicable to the Aghnides patents in suit. The ingenious defense is urged that one skilled in the art could appropriate some of the teachings of Felten with some of those disclosed in Battersby and Solomon and then take some of the teachings of Viellard British Patent 12,345 of 1898 and Purser British Patent No. 136,663 of 1919 and produce the same results as did Aghnides. Here, however, none of the prior art seemed to have been interested in aerating water in the kitchen tap in order to cause it to emerge in a coherent, bubbly, soft, splashless stream. They did not see the problem, did not undertake its solution, and not one nor all of the

prior art became the equivalent of Aghnides and it required invention to combine the old principles into the new and useful result found in the patent in suit. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912; Colgate-Palmolive Co. v. Carter Products, Inc., 4 Cir., 230 F.2d 855.

If Aghnides had done nothing more than make a true combination in which old elements were combined to produce a new and useful result it constituted invention and he is entitled to protection against infringement. Numerous citations from this Circuit could be added, but the two cases cited above and Reynolds v. Whitin Machine Works, 4 Cir., 167 F.2d 78 cover every phase of this case in regard to patentability, prior art and infringement.

The improvement patent '832 was allowed over the basic patent '846 by the Board of Appeals in the Patent Office. The demonstrations of the device constructed according to the disclosure of '832 in comparison with the prior art convincingly show that invention beyond the skill of the art at that time was required. Defendant has not established anticipation of '832 or that the ordinary skill of the art could create the improved combination of this patent.

The application for patent '832 was filed April 5, 1940. The defendant contends that Chicago Faucet Co. offered for sale the device embodying the patent more than two years before the filing of the application. Aghnides made the invention and arranged with Chicago Faucet Co. to manufacture it as his licensee but before it was to be put on the market a sample was to be submitted to Aghnides for his approval. Due to an advertisement in Domestic Engineering, March, 1938, by Chicago Faucet Co. it is urged that this constituted an offer for sale. The evidence shows the aerator was not assembled until April 14, 1938, at which time a sample was sent to Aghnides for his approval and there were no sales of such aerators until May, 1938. It was not on sale or sold prior to two years before the application was filed.

The accused device Mel-O-Flo sold by the defendant was manufactured by Melard Manufacturing Co. When the summons and complaint in this case was received in defendant's main office in New York, it was forwarded by Mr. Guerber, its chief counsel, to Melard Manufacturing Company, under date of May 20, 1954, with the following request: "In as much as we purchase "Mel-O-Flo Jet Aerators" from you we look to you solely to take over the defense of this action and save us harmless from any and all loss, cost, damage and expense which may arise therefrom." On May 21, 1954, Melard wrote Mr. Guerber acknowledging receipt and said: "we have forwarded above to our attorneys, and shall contact you upon hearing from them." At the request of Block, Meyland and Lloyd, time for filing answer was extended June 2, 1954 to July 6, 1954. The answer was filed on that date signed by the same attorneys but who were not employed by S. H. Kress and Co. The answer pleads invalidity, non-infringement and the prior adjudication in Aghnides v. Goodrie, 7 Cir., 210 F.2d 859, and contains a counterclaim for a declaratory judgment declaring both patents invalid and void and non-infringement by defendant.

On October 7, 1954, plaintiff served interrogatories on Block, Meyland and Lloyd. On Oct. 19, 1954 Mr. Lettvin of the firm of Bair, Freeman and Molinare of Chicago visited Mr. Guerber in connection with answering the interrogatories. Melard Manufacturing Co. had assumed and actually conducted the entire defense through its patent attorneys above named without Kress knowing who they were or what they were doing. Plaintiff took the depositions of the officers of Melard Manufacturing Company and of S. H. Kress and Co., including counsel, but by objecting in behalf of Melard that communications between it and counsel were privileged and in the same manner as to communications between Kress and counsel, succeeded in withholding the details of what occurred on Oct. 19th and thereafter except when depositions of Melard Officers were taken Bair, Freeman and Molinare were entered as attorneys for Melard and they were listed also attorneys for Kress. On Nov. 2, 1954, Melard delivered to Kress this letter:

"Ex. 2.          November 2nd, 1954.

"S. H. Kress & Co.
"114 Fifth Avenue
"New York, 11, N. Y.

          "Att. Mr. Gerber

"Gentlemen:

"Be advised that Melard Manufacturing Corporation will and does indemnify S. H. Kress & Company against all claims in the United States arising from charges of patent infringement as a result of Kress' sale of Mel-O-Flo Aerators.
          "Very truly yours
          "Melard Manufacturing Co.

          "Signed
"Sidney J. Shames
     "President."

Kress answers the interrogatories Nov. 8, 1954 notwithstanding the above letter, the answers to the interrogatories, its answer to No. 17 is: "No knowledge, but neither Melard Manufacturing Corp. nor any attorneys acting on behalf of Melard Manufacturing Corporation have agreed with S. H. Kress and Company to aid in or contribute toward the defense of this action in the future."

The depositions, especially of Guerber, indicate that Lettvin interviewed Guerber in connection with, and assisted in, preparing answers to the interrogatories and at that time some kind of arrangement was effected between the attorneys for Melard and defendant Kress whereby as of October 19, 1954 Bair, Freeman and Molinare would represent Kress. The details were not disclosed due to objections by Lettvin that all that information was privileged.

By leave of court Chase Brass and Copper Co., Inc., became a party as assignee and filed its complaint January 28, 1955, adopting the original Complaint of Agh-

nides. The trial began January 26, 1955 and continued through January 28, recessing to a later date. Defendant filed an answer Feb. 11, 1955, reasserting the defenses of its original answer and pleaded a counterclaim for misuse and anti-trust violation and for damages. At the resumption of trial on October 10, 1955, Mr. Freeman announced the abandonment of the defense of misuse and its counterclaim for violation of the anti-trust laws. On October 12, 1955, Mr. Freeman stated that he never would have withdrawn his misuse defense or abandoned the counterclaim for anti-trust violation if he had not been directed to do so by general counsel for Kress. At that time he admitted his firm was being paid by Melard Manufacturing Company.

▮ It is the contention of the defendant that Melard Manufacturing Company was not a party to the suit and that no issues are raised which warrant a finding in relation thereto, relying on Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 116 F.2d 845, 846. It is there stated: "Obviously it was not necessary to the decision of any of these issues to decide who was defending the action." This is in conflict with the rule in the Third and Fourth Circuit Courts of Appeals. Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 139 A.L.R. 1 and extensive note beginning at page 9; E. I. Du Pont De Nemours & Co. v. Sylvania Industrial Corporation, 122 F.2d 400; Aetna Casualty & Surety Co. v. Abbott, 130 F.2d 40, at page 42. In the latter case the court said:

"The defense that the gold certificates were possessed by plaintiff in violation of law was asserted and fully passed on in the suit against the Takoma Park Bank, in which the judgment sued on was obtained, and which was admittedly defended by defendant under its policy. It is too well settled to admit of discussion that on such a question the defendant is concluded by the judgment. The defendant, by defending the action, bound itself by the judgment to the same extent as though a party to the record. E. I. Du Pont De Nemours & Co. v. Sylvania Industrial Corporation, 4 Cir., 122 F.2d 400, 404; Lovejoy v. Murray, 3 Wall. 1, 18 L.Ed. 129. And as said by this court in National Bondholders Corp. v. Seaboard Citizens Nat. Bank, 4 Cir., 110 F.2d 138, 143: 'It is well settled that a fact or question which was actually and directly in issue in a former suit, and was there judicially determined by a court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between the parties or privies in the same or any other court upon either the same or a different cause of action.'"

In Davis Company v. Baker-Cammack Hosiery Mills, D.C., 86 F.Supp. 180; Baker-Cammack Hosiery Mills v. Davis Company, 4 Cir., 181 F.2d 550, there were 167 hosiery manufacturers, not nominal parties to the record, but companies who contributed to the fund to pay counsel for defending the patent infringement suit. The judgment was applied to each contributor as to validity of the patent and each was enjoined against infringement of the patents in suit.

Hence, both by the great weight of authority and specifically under the law of this circuit, Melard Manufacturing Co. having conducted the defense for Kress and for itself as fully and completely as it could have done if it had been a party, is bound by the judgment against Kress, especially as to the validity of the patents in suit and their infringement by the Mel-O-Flo device sold by Kress and manufactured by Melard Manufacturing Company. It is true that Kress, for reasons not disclosed to the court, decided to abandon the counterclaim for damages on its plea of anti-trust violation, but there is nothing to show that Melard elected to decline to defend the suit because of Kress' abandoning the counterclaim and defense of misuse. It is not

material whether Melard defended for Kress in discharge of Melard's duty to do so under its agreement with Kress or to protect itself from a judgment in favor of Aghnides. The fact remains that it conducted the defense and is bound by the judgment against Kress.

Let a decree be entered according to the views herein expressed.