**Elie P. AGHNIDES, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 183–59.**

United States District Court
District of Columbia.
Nov. 17, 1960.

Edward R. Hamilton, Akron, Ohio, and William D. Hall, Washington, D. C., for plaintiff.

David Kreider, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents to secure an adjudication that the plaintiff is entitled to a patent on application No. 351,907, filed on April 29, 1953, in respect to certain claims that were rejected by the Patent Office. The claims pressed at this trial are 17 and 20.

The application relates to an improvement in aerators attached to ordinary household faucets. The testimony shows that the plaintiff was the originator of the aerator in this country and that a patent was issued to him on an aerator on June 3, 1941, No. 2,244,280.

The aerator is substantially a circular attachment that is either screwed on or otherwise fastened to a faucet. Its purpose is to introduce air into the stream of water flowing out of the faucet and to create an even flow of water that would not splash. It consists of a hollow circular holder or container that fits over the faucet. Inside is a perforated plate with the water flowing through the perforations. At the bottom is a screen through which the water flows. In the walls of the container there are horizontal slots through which air enters and becomes mixed with the water as the water flows through.

This patent was originally held invalid by the Court of Appeals for the Seventh Circuit. Aghnides v. Goodrie, 210 F.2d 859. Later it was held valid in the Fourth Circuit, S. H. Kress & Co. v. Aghnides, 246 F.2d 718. The opinion of the Fourth Circuit had the advantage of the opinion of the Seventh Circuit, reviewed it in detail, and declined to follow it. Apparently the industry has adopted the decision of the Fourth Circuit; at least it has acquiesced in it, and the testimony shows that the plaintiff has been collecting royalties under the patent.

There is no doubt that the plaintiff invented a useful household article and has made a contribution. Testimony shows that over 22 million aerators, built according to the plaintiff's original patent, have been sold in this country and a considerable number abroad.

On April 20, 1943, the plaintiff obtained a second patent, No. 2,316,832, covering an improvement on his original invention consisting of a second plate inserted inside the container. The second patent was held invalid in the Fourth Circuit in the case just cited, at page 724.

The plaintiff testified that some complaints were received from customers as to the fact that occasionally the side slots became clogged with dirt and dust and that this circumstance interfered with the proper operation of the aerator. The plaintiff then designed a further improvement in his aerator by eliminating the side slots completely and inserting in their place vertical slots surrounding the screen at the bottom of the container. The testimony indicates that while this improvement has not yet been marketed

in the United States although it has been used abroad, nevertheless the new construction constitutes a substantial improvement over the earlier structure.

The question to be determined, however, is whether this improvement is the product of mechanical skill or is the result of the inventive faculty and therefore rises to the dignity of a patentable invention. Without any other prior art, and using merely the earlier 1941 patent of this plaintiff as prior art, the Court would have considerable hesitancy in holding that it is a patentable invention to change the location of the slots through which the air enters the mechanism.

The Court is rather reminded of the oft-quoted statements of the Supreme Court in the celebrated case of Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, where the Court said:

"It was never the object of those laws [that is, the patent laws] to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator is the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

The Court, however, is not going to rest upon this doctrine, especially as the Patent Office did not solely rely on it. The Patent Office cited a patent to Bachli, No. 2,541,854, issued on February 13, 1951, which also related to aerators. That patent showed slots that opened to the air from a vertical rather than a horizontal position, although they were located above rather than alongside the screen.

The Patent Office further cited a patent to Turek, No. 2,316,135, issued on April 6, 1943, which showed openings to the open air located at the bottom surrounding the structure. To be sure, the Turek patent does not relate to aerators but involved a showerhead. There is a dispute between the plaintiff and counsel for the Patent Office as to whether the two are analogous arts. The Patent Office held they are. Moreover, both are placed in the same class in the classification of various arts by the Patent Office.

On a technical matter of this kind, unless it appears clearly that the Patent Office is in error, the Court would follow the ruling of the Patent Office. But irrespective as to whether the two arts are analogous, the point and the sole point for which the Turek patent is cited is that it suggests the thought of having openings to the open air in a vertical position at the bottom of the structure.

Bearing in mind the Bachli patent as well as the Turek patent, but principally the Bachli patent, it is clear that the slots through which the air enters the stream may be located at various positions. The exact location becomes a matter of choice and a person skilled in the art would naturally choose that location which would give the best results.

Under the circumstances the Court is unable to find any error on the part of the Patent Office in declining to grant a patent on the two claims involved here.

The Court might add another comment. In granting a patent on an improvement to the original inventor, the Patent Office would in effect prolong the original seventeen-year monopoly. Here the plaintiff has made a real contribution. He has been rewarded with the seventeen-year monopoly. But by getting a patent, if one was granted to him on a change in his structure, he would renew his monopoly. That is a result which would not be in accord with the intent of Congress and must be taken into consideration unless it is clear that the improvement is a real product of the inventive faculty.

In the light of these considerations the Court will render judgment for the defendant.

Counsel will please submit proposed findings of fact and conclusions of law.