OTIS ELEVATOR CO. v. 570 BUILDING CORPORATION et al. (STALEY ELEVATOR CO., Inc., Intervener). *

No. 287.

Circuit Court of Appeals, Second Circuit.

July 29, 1938.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, Willis H. Taylor, Jr., Morris D. Jackson, and John T. Farley, all of New York City, of counsel), for appellants.

Watson, Bristol, Johnson & Leavenworth, of New York City (Edwin W. Sims, of Chicago, Ill., and C. V. Johnson, L. A. Watson, and M. C. Weisman, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for patent infringement brought by Otis Elevator Company as assignee of patent No. 1,694,823 to Larson, application filed May 24, 1922, and patent No. 1,904,647 to Lindquist et al., application filed May 21, 1925. The patents relate to electric elevators of the automatic push button type. Claims 1 to 29 inclusive of the Larson patent and claims 4 to 6 inclusive, 9 to 14 inclusive, 23, 27, 28 and 76

*Writ of certiorari denied Staley Elevator Co. v. Otis Elevator Co., 59 S.Ct. 107, 83 L.Ed. —.

to 84 inclusive of the Lindquist patent were held valid and infringed by each of the defendants. The defendant 570 Building Corporation is the owner of an apartment building in which are located the accused elevators. The individual defendants are officers of said corporate defendant, control the majority of its stock, and were in charge of its business activities. Staley Elevator Co., Inc., manufactured and installed the accused elevators, and intervened as a party defendant. From the interlocutory decree in favor of the plaintiff the defendants have appealed.

■■ The Larson patent relates to an elevator to be operated by what is called "nonselective collective automatic operation." This system operates automatically by means of electric push-buttons, there being one car-button for each floor served and one hall-button at each floor. All stops registered by the momentary pressure of hall-buttons or car-buttons are made in the order in which the floors are reached, irrespective of the number of buttons pressed or of the sequence in which they were pressed. Once the car has begun to move in a given direction, it will proceed in that direction to answer all calls registered ahead of it; and until all such calls have been responded to, the car will not reverse its direction to pick up the calls registered behind it. Since there is but one hall-button on each floor, the system is non-selective and a prospective passenger has no way of indicating the direction in which he wishes to be carried. The car will answer a call registered by a hall-button by stopping at the appropriate floor as soon as it reaches it regardless of whether the car is going up or down at the time. If the car is travelling in the direction opposite to that in which the prospective passenger wants to go, he will be carried in the wrong direction until all calls in that direction have been picked up; then the direction of the car will be reversed to take the passenger to his proper destination. Claim 3 may be taken as typical of the Larson claims. It reads as follows:

"3. An elevator system comprising; an elevator car; a plurality of floors; a plurality of push buttons, one for each of said floors; means responsive to the operation of any one of said buttons, other than the one for the floor at which the car is positioned, for causing the starting of the car and thereafter responsive to all of said buttons operated for causing the restarting of the car after each stop until stops have been made in response to all of the buttons operated, thus giving continuous operation until all of said buttons have been answered; and means responsive to said operated buttons for causing the stopping of the car at all the floors for which buttons have been operated, regardless of the time during said continuous operation of the car that the operation of said buttons occurred, said stopping means including means for causing said stops to be in the natural order of floors, regardless of the order in which the buttons were operated."

The Lindquist patent relates to elevators to be operated by "selective collective automatic operation." This system operates automatically by means of one button in the car for each floor served and by "up" and "down" hall-buttons at each floor. All stops registered by the momentary pressure of the car-buttons are made as defined under nonselective collective automatic operation, but the stops registered by the momentary pressure of the hall-buttons are made in the order in which the floors are reached in proper direction of travel after the buttons have been pressed. With this type of control, all "up" calls are answered when the car is travelling upward and all "down" calls are answered when the car is travelling downward. Claim 11 may be taken as typical of the Lindquist claims, and is as follows:

"11. A control system for an elevator car comprising; a plurality of manually operable up switches, one at each of a plurality of floors; a plurality of manually operable down switches, one at each of said floors; means operable in response to each of said switches to register a call for the floor at which the switch is located; means responsive to the first call registered to initiate starting of the car; mechanism controlled by car movement and operable to intercept the car when moving upwardly at the floors for which up calls have been registered and when moving downwardly at the floors for which down calls have been registered, said starting means acting to initiate restarting of the car after each stop ｉso long as calls which have been registered remain unresponded to; and means operable when each call is answered to cancel that call."

In general the Staley installation operates like the elevators of the patents in suit. In it, as in the Larson system, the

direction of car travel is determined by a mechanism which is operated when the first call is registered and remains operated until the farthest call in that direction of travel is answered. Thereupon, if calls in the other direction have been registered, the direction of car travel will be reversed and such calls will be answered. In the Lindquist system the car travels to and is reversed automatically at the terminals. In each system when a button is pushed the registration of a call is accomplished by the setting of a floor relay which in turn causes the operation of a switching mechanism to apply power to the motor. In each system after the car is started it continues to move until mechanism controlled by car movement and responsive to the relay operated causes it to be stopped at the floor for which a call is registered, by discontinuing the power to the motor and applying the brake. The car thus stops in answer to the call and the operated relay is reset by a mechanism controlled by car movement. In the Staley system and in Lindquist's when the car is travelling in one direction in response to a registered call, the operation of a hall-button on an intermediate floor to register a call for the opposite direction does not cause the car to stop as it reaches that floor but causes it to return later, when moving in the other direction, to answer the call thus registered. In other words, both Staley and Lindquist have "selective collective automatic operation."

In the trial court the defendants set up the usual defenses of lack of invention and non-infringement. They rely upon the same grounds on appeal. On the issue of invention the appellants concede that there is no direct anticipation of the elevator system of the Larson patent or the Lindquist patent, but contend that any competent electrical engineer could have produced the automatic elevators disclosed by the patents in suit in view of the prior art. They rely upon the old SOB elevator and the Parker Reissue patent No. 16,297, original application filed April 25, 1921. The argument is that the combination of these two systems to produce the elevators of the patents in suit was obvious to an engineer familiar with electric circuits and required no imagination or inventive faculty.

The old push-button automatic elevator of the SOB type is controlled by a series of car-buttons, one for each of the several floors served, and one hall-button at each floor. This system is commonly referred to as "single automatic operation." A prospective passenger by pushing the hall-button will bring the car to that floor, and by pushing the appropriate car-button will be carried to the floor desired. In systems of single automatic operation the mechanism and circuits are so arranged that the pressure of any car-button or hall-button will cut all other hall-buttons out of circuit until the response to the first button has been completed. The result is that the first passenger obtaining control of the car has exclusive use of it from the time his call has been registered until he has been carried to his destination. In answering his call the car may pass intermediate floors at which other prospective passengers are waiting to be carried in the same direction as the car is travelling. This feature was a serious limitation upon the usefulness and efficiency of the old SOB elevator. To obviate it was one of the objects stated by Larson.

The elevator of the Parker Reissue patent is not operated wholly automatically. It requires the services of an operator in the elevator to initiate car movement and determine the direction of travel after each stop, but the means for bringing the car to a stop are automatic. There is a button in the car for each floor, and at every floor there are two hall-buttons, one "up", the other "down". In its journey either up or down the shaft, the car will stop automatically at the proper levels of those floors for which the car-button or appropriate hall-button has been pressed. The sequence in which they were pressed is immaterial; the car will stop in each direction of travel in the natural order of floors encountered for which a call was registered. In the Parker system, unlike the SOB system, there is no interval during which the hall-buttons are inoperative; in this respect it is like Larson and Lindquist. A call once registered will remain effective until responded to. The purpose of Parker was to make it impossible for a careless or inefficient operator to disregard hall-button calls and to insure stopping the car at the proper floor level; but it left with the operator the starting of the car and its direction of travel. He could, if he desired, reverse the direction of travel before an upbound car had reached the floors above,

at which hall-buttons had been pushed, and vice versa.

Larson took the motion-initiating and direction-determining elements of the old SOB system, under which the car would respond to the button first pushed but to no other, and modified it by providing that the pushing of one button should not cut out all others, with the result that in the Larson system the car would stop for intermediate signals and would proceed to the most distant call before changing its direction of travel. But as there was only one hall-button on each floor, there was no selection between up and down calls. Lindquist et al. added the selective feature. He provided an "up" button and a "down" button at all intermediate floors between top and bottom; all up calls ahead of the car are answered, if upward motion is first initiated, before stops are made for the down calls, and all down calls ahead of the car are answered before up calls, if downward motion is first initiated. Parker, which antedates both Larson and Lindquist, likewise provided an "up" button and a "down" button at each floor and automatic means for stopping at a floor for which a call was registered, but Parker required an operator in the car to determine the direction of travel and to initiate motion after each stop. In effect the patents in suit combine the "floor selector" mechanism of the Parker system with the starting and direction-determining mechanism of the old SOB system, thereby eliminating the operator required by Parker; but it is not so clear as the appellants would have us believe that the combination was obvious or simple. Although the mechanical operation of the elevator car in each of the systems is relatively simple, simplicity is not characteristic of the electrical circuits which control the car movements. The wire diagrams of the circuits are exceedingly complex. All the parts of an automatic electric elevator system operate as an integrated unit to produce the proper car motion, and those parts, joined in numerous circuits, are mutually interdependent. The complex wire diagrams of a relatively simple system become even more complicated as new functions are added. In systems of selective collective automatic operation there are three buttons for every floor, two in the hall and one in the car. No matter in what order or in what combination those buttons are pressed, the signals must be properly sifted so that the car responds to all calls during one round trip up and down the shaft. Calls immediately ahead of the car are answered directly; calls further along in the same direction of travel must be held in abeyance and the switch controlling direction of travel must not be disturbed until all intermediate calls in that direction have been responded to; and calls in the opposite direction must be held in abeyance even longer, for the reversing switch cannot operate until all calls in the original direction have been answered. Not only is the arrangement of circuits by means of which calls are thus sifted and answered complicated, but even an operation apparently as simple as that of stopping the car at a floor level is complex and requires the proper co-ordination of several minor operations. First, the first gap of the two gap series circuit of the "floor selector" is closed when the appropriate hall-button or car-button is pushed. Then, as the car passes a point in the shaft a predetermined distance from the floor, the second gap is closed. Thereupon, the power is shut off from the motor through a series of switches; then the brake is applied to the motor; and finally the call registered when the hall-button or car-button was pushed is cancelled. For the satisfactory operation of such a system, the co-ordination of the various parts of the circuits must be perfect, and all unwanted electrical connections, that is, "sneak circuits," must be eliminated. In view of the intricate and integrated manner in which the systems operate, Larson's as well as Lindquist's, the proposition that it required no invention to devise either requires more proof than mere statement. The burden was upon the appellants to rebut the presumption of validity arising from the issuance of the patents by the Patent Office, which had before it the Parker reference. They have not carried that burden. Their expert witness, Mr. Kramer, testified at great length and introduced numerous diagrams in an attempt to establish that a combination of the starting and direction determining mechanism of the SOB elevator and the "floor selector" mechanism of the Parker elevator did not involve elaborate adjustments and did not amount to invention. This was disputed by the plaintiff's expert Mr. Crabbe. Mr. Kramer's testimony did not carry persuasion to Judge Moscowitz; nor does it to us. We find no error in the district court's ruling that the claims in suit are valid.

On the issue of infringement, there was also no error. As already shown, the Staley installation operates in general like the elevators of the patents in suit. It employs selective collective automatic operation. Verbally claim 3 of the Larson patent and claim 11 of the Lindquist patent read upon the Staley system. In advancing the argument that the claims are not infringed, the appellants rely upon three minor differences in construction. The first relates to the gate of the elevator car. In the elevators of the patents in suit the gate is closed by hand. If there is a passenger in the elevator his weight upon the floor platform of the car, will prevent the car from moving until he has closed the gate by hand. If there is no one in the car, it will respond to a hall-button call with its gate open. In the Staley elevator, the gate closes automatically whether or not there is a passenger in the car. The automatic closing of the gate is one of the operations which results from registering a call and must take place before the car can move. The district judge characterized both types of gates as equivalent safety devices. This view is correct. The automatic gate is but a minor addition and refinement upon the elevators of the patents in suit. The second difference in construction relied upon to prove non-infringement relates to the movement of the commutator drum. In the Staley elevator the drum is turned by a rachet and pawl device which causes it to jump a step as the car reaches each floor level, while in the plaintiff's patented elevator the motion of the commutator drum is continuous. It is clear that the two devices are equivalents. The motion of the car must be synchronized with the commutator drum; but the only time that synchronism is important is when the car is in position to stop at a floor level. Both the intermittent and the continuous movement of the drum can produce synchronism at that moment; whether it is accomplished by one means or the other is immaterial. The third ground urged by the appellants relates to the manner in which the car is stopped at a floor level. In the plaintiff's systems as in the defendants' the stop is effected by a combined electromechanical operation which opens a pair of contacts. In Larson and in Staley the contacts are opened by energizing a coil, while in Lindquist a coil is de-energized to open them. The two methods are equivalents.

Decree affirmed.