**CITY OF GRAFTON, W. VA., et al. v. OTIS ELEVATOR CO.**

No. 5684.

Circuit Court of Appeals, Fourth Circuit.

Feb. 27, 1948.

Clarence B. Des Jardins, of Cincinnati, Ohio (Des Jardins & Compton, of Cincinnatti, Ohio, D. H. Hill, Arnold and Arnold, Crawford & Hyer, all of Elkins, W. Va., on the brief), for appellants.

Clair V. Johnson, of New York City (Watson, Bristol, Johnson & Leavenworth, of New York City, on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Otis Elevator Company (hereinafter called Otis) instituted a civil action in the United States District Court for the Northern District of West Virginia against the City of Grafton, West Virginia, and its guarantor, the Warner Elevator Manufacturing Company (hereinafter called Warner). Otis, owner of Lindquist patent 1,-904,647, charged that this patent was infringed by the elevator system installed by Warner in the Grafton City Hospital. The District Court held that the patent in suit was valid and was infringed by the accused device. The opinion of the District Judge is reported in 72 F.Supp. 833. Defendants have appealed to us, raising the questions of the validity of the Lindquist patent and the infringement thereof by the Grafton elevator.

We first consider the question of the validity of the Lindquist patent. The device covered by the patent is very complicated and the patent as issued covers over forty printed pages. We are dealing here with a combination patent. The requisites for a valid combination patent are thus set out, with an elaborate citation of authorities, in 40 Am.Jur. 543, § 19: "A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument. The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) that a combination is patentable if it produces new and useful results, although all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements; (2) if it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, and a new result is given by their union; (3) if it either forms a new machine of distinct character or formation, or produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements; (4) when the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way."

The validity of the very patent here in suit was sustained in Otis Elevator Co. v. 570 Building Corporation, 35 U.S.P.Q. 420, by Judge Moscowitz, sitting in the United States District Court for the Eastern District of New York. This decision was unanimously affirmed by the United States Circuit Court of Appeals for the Second Circuit, opinion by Judge Swan, 98 F.2d 699, and certiorari was denied by the United States Supreme Court, 305 U.S. 640, 59 S.Ct. 107, 83 L.Ed 412. We cordially agree with the result and the reasoning in that case and it should be unnecessary for us to add much to what was there said in the opinions of District Judge Moscowitz and Circuit Judge Swan.

The Lindquist patent discloses an elevator system consisting primarily of an elevator car, operating in a hatchway, serving a plurality of floors, a motor for moving the car up and down, a brake for stopping the car, and a control system for the elevator car. It is with this control system that we are particularly concerned.

Within the car is a plurality of control switches in the form of car push buttons, one for each floor; at each intermediate floor are an Up hall push button and a Down hall push button; at each terminal floor is a single hall button, a Down button at the highest floor, an Up button at the lowest floor. The hall buttons serve to call the car to the indicated floors; the car push buttons to send the car to the indicated floors. Since these push buttons are continuously operable, a call can be registered at any time. Each hall push button operates a floor relay to register a call, which for the intermediate floors corresponds to the desired direction of travel; each car push button operates a floor relay to register a call for its corresponding floor. Once in operation each floor relay is retained in operative condition to maintain the call registered until that particular call is answered, then the relay is reset by its other coil.

The registering of a call in response to the push button first pressed starts the car by the operation of switching mechanism which causes the application of power to the motor. When once started, the car continues to move until mechanism, controlled by car movement and responsive to the relay operated, causes it to be intercepted at the floor for which a call is registered, such interception being effected by discontinuing the power to the motor. Thus the car stops in answer to the call, while the operated relay is reset by a mechanism controlled by the movement of the car.

If several push buttons in the car are pressed, this serves to stop the car at the respective floors for which each push button has been operated. If several hall buttons are presssed, the car, when traveling in the Up direction, is intercepted and stops successively at each floor at which an Up hall button has been pressed; conversely, the car, when traveling in the Down direction, is intercepted and stops successively at each floor at which a Down hall button has been pushed.

It is possible, by the pressure of a push button, to register a call at any time. The car will start or continue to operate by stopping and, after a predetermined time-interval, the car will automatically restart to answer all the registered calls. These registered calls are answered in the natural order of the floors, quite regardless of the sequence of operation of the push buttons. The car passes by the Down hall-calls when going up, and passes by the Up hall-calls when going down.

In the Lindquist patent, a brake, placed at the top of the hatchway, is provided for the elevator car, together with a hoisting mechanism attached to the car by cables. As the car moves, a pair of tapes, attached to the car, drives the selector machine so that its cross-head moves up and down, picking up the calls and initiating the operations of starting and stopping the car. Also provided are the director switch hatchway cams, the director switch motor and switch, on top of the car, which operate to reverse the direction of the car at the terminal floors.

The pressure of a car button or hall button energizes the coil of its relay, serving to close contacts which are held closed until the resetting of the relay when there is a response to the call. One set of these contacts renders alive the corresponding fixed contact on the selector machine. Another set of relay contacts makes the car start automatically in response to the first registered call; and then this set of relay contacts, after the delay at each stop, effects the automatic restarting of the car until there has been a response to all the registered calls.

As the car travels up, contacts in the circuit of Up brushes, carried by the cross-head of the selector machine, are closed, so that these brushes are alive. Thus, upon the encountering of a fixed contact by either, the car is stopped at the corresponding floor and the cancellation of the call is effected. Since the contacts in the circuit of Down brushes are open, nothing happens while the car is traveling Up when a live fixed contact is encountered by either

of these brushes. When the car is proceeding Down, the reverse is true—the Down brushes are alive and the Up brushes are not.

Appellants first attack the validity of the patent in suit on the score of lack of patentable novelty under the prior art. We think this contention is utterly lacking in merit. The only previous patents meriting consideration here are the Parker patent and the Larson patent. These two patents were discussed at length in the opinions of District Judge Moscowitz and Circuit Judge Swan in the 570 Building Corporation case, supra.

The Lindquist elevator was the first practical, automatic, selective, collective elevator. This elevator is automatic since the car is operated solely by the pressing of the hall buttons and the car buttons; it is selective because when traveling in one direction, it responds to calls in that direction, yet it passes by calls for the opposite direction; it is collective by virtue of the fact that it responds to all the calls registered on the buttons by stopping to answer calls ahead of the car and then returning to answer calls behind the car.

We are also aided by the presumption of validity attaching to the grant of the patent. Here the patent was granted after lengthy and extended hearings in the Patent Office, where there were interference proceedings.

Otis, in the instant case, proved beyond peradventure the striking commercial success of the Lindquist patent. Over 5,000 of these elevators have been sold by Otis, with a total value in excess of $45,000,000. And over 20 licenses have been granted by Otis, while its licensees have sold more than 1,800 elevators for more than $16,000,000. Said Mr. Justice (afterwards Chief Justice) Stone in Smith v. Hall. 301 U.S. 216, 233, 57 S.Ct. 711, 718, 81 L.Ed. 1049: "Commercial success may turn the scale when invention is in doubt." See, also, Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973; Hutzler Brothers Co. v. Sales Affiliates, Inc., 4 Cir., 164 F.2d 260.

The validity of the claims of the Lindquist patent in suit is attacked by appellants upon the further ground that these claims are too broad and are couched in terms that are purely functional. This contention, too, we think is lacking in merit.

Claim 11, which is quite typical, is here set out: "11. A control system for an elevator car comprising: a plurality of manually operable up switches, one at each of a plurality of floors; a plurality of manually operable down switches, one at each of said floors; means operable in response to each of said switches to register a call for the floor at which the switch is located; means responsive to the first call registered to initiate starting of the car; mechanism controlled by car movement and operable to intercept the car when moving upwardly at the floors for which up calls have been registered and when moving downwardly at the floors for which down calls have been registered, said starting means acting to initiate restarting of the car after each stop so long as calls which have been registered remain unresponded to; and means operable when each call is answered to cancel that call."

There might well be merit in this contention were we called on to construe Claim 11 (and similar claims) standing alone. It, however, is well settled in patent law that while the invention is measured in terms of the claims, yet the claims are to be read, interpreted and applied in the light of the specifications, which may not enlarge a claim but which may explain and clarify the claim. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. See, also, Hutzler Brothers Co. v. Sales Affiliates, Inc., 4 Cir., 164 F.2d 260; Lever Brothers Co. v. Proctor & Gamble Manufacturing Co., 4 Cir., 139 F.2d 633.

Here the specifications describe at great length, and in minute detail, the precise mechanisms and the specific devices that are employed to bring about the results outlined in the claims. We therefore must affirm the finding of the District Court [72 F.Supp. 836]: "It is specifically found that the patent in suit is in all respects in full and complete compliance with each and every requirement of 35 U.S.C.A. § 33, R. S. § 4888, both as to disclosure and claims."

This brings us to the question of infringement. We think (as did the District Court) that the claims of the Lindquist patent read squarely upon the accused device; that the differences between the Lindquist elevator and the Warner elevator are few, minute and inconsequential, while the similarities between the two elevators are many, striking and essential.

Appellants, in their brief, make this admission: "In each system, stopping of the car in response to intermediate floor calls is initiated by engagement of an up brush or a down brush with a contact, connected with the relay on which the floor call is registered, one of said brushes being rendered live and the other dead, according as relay-controlled contacts in the brush circuits are open or closed."

We are impressed by this admission; we are not impressed by the statement that follows: "but there the similarity between the two systems ends." The similarities between the two systems are set out at length in the opinion below. It would serve no useful purpose here to discuss these similarities further.

We proceed to consider the differences between the two systems upon which appellants rely. Of these, only three merit our attention: (1) the absence in the Warner elevator of the director switch employed by Lindquist; (2) Warner's use of sectional floor strips, one for each floor served, not found in Lindquist; (3) the reversal of the Lindquist car only at the terminals, while in Warner the reversal of the car is effected when the furthest call in the direction in which the car is traveling is answered, and the car, before reversing its direction, does not go to the terminal floor.

Of these differences between Lindquist and Warner, the first two may be considered together, since the sectional strips in Warner perform essentially the same function as the director switch in Lindquist. Thus in appellant's brief we find the statement: "In the Warner system installed at the Grafton hospital, there is nothing that corresponds to the director switch of the patented system. In appellants' system, the contacts controlling the up and down brush-es and rendering them live or dead, selectively, are controlled by up and down relays, the energizing circuits of which are controlled by the engagement of sectional floor strips with floor brushes, one for each of the floors to be served."

Certainly to the electrical art there is nothing new in the control of energizing circuits through the engagement of sectional strips with brushes. That idea is very old and has been frequently employed in electrical devices of many kinds. At best it is a mere mechanical equivalent of the Lindquist device and its difference from Lindquist may be regarded as minor and inconsequential.

We cannot subscribe to the contention of the appellants that the Lindquist patent must be limited to an elevator wherein the reversal of the car is effected only at the terminals. Nor can we regard the effecting of such car-reversal at an intermediate floor (present in Warner) as anything other than a slight, non-essential variant from Lindquist. All that Warner has done is to add a minor refinement to Lindquist. In Tilghman v. Proctor, 102 U.S. 707, 733, 26 L.Ed 279, Mr. Justice Bradley pointed out: "It may be an improvement to use the lime for that purpose; but the process remains substantially the same. The patent cannot be evaded in that way." Said Mr. Justice (afterwards Chief Justice) Stone, in Smith v. Snow, 294 U.S. 1, 20, 55 S.Ct. 279, 287, 79 L.Ed. 721: "Respondents do not avoid infringement of the method by varying the details of the apparatus by which they make use of it." Our Court said, in Lever Brothers Co. v. Procter & Gamble Manufacturing Co., 4 Cir., 139 F.2d 633, 643: "The infringement is made none the less real by virtue of minor and immaterial differences between the Bodman and Procter processes." Again, Judge Parker, speaking for our Court, in Hartford-Empire Co. v. Swindell Bros., Inc., 4 Cir., 99 F.2d 61, 62: "It (the patent in suit) was infringed when a lehr was built involving substantially the same combination." And, see particularly, the language of Judge Swan, in the 570 Building case (involving, as we have indicated, the Lindquist patent), 98 F.2d 699, 703, discussing the differences (held to be minor and equivalent) between the Staley

elevator (there the accused device) and the Lindquist elevator.

Rarely do we find an example of what might be called perfect infringement. No patent infringer would be so silly as to make and vend a device similar in every minute detail to a patent. Infringement connotes, between the patent and the accused device, merely correspondence as to the substantial, dominant and essential elements. Any other view would make of a patent a foolish and fatuous thing.

We agree with the District Court that the Lindquist patent marked a striking and original advance in the art, fulfilling a long-felt but previously unsatisfied want, and is valid and infringed by the Warner elevator installed in the Grafton City Hospital. The judgment of the District Court accordingly is affirmed.

Affirmed.