**PARKS–CRAMER COMPANY,**
Plaintiff,

v.

**The AMERICAN MONORAIL COM-
PANY, Defendant.**
Civ. A. No. 1072.

United States District Court
W. D. North Carolina,
Charlotte Division.

Jan. 4, 1957.

Taliaferro, Grier, Parker & Poe, Charlotte, N. C., Heard, Smith, Porter & Chittick, Boston, Mass., for plaintiff.

Craighill, Rendleman & Kennedy, Charlotte, N. C., Richey, Watts, Edgerton & McNenny, Cleveland, Ohio, for defendant.

WARLICK, District Judge.

This is a patent suit in which infringement is charged in the usual form. The defenses likewise are the customary ones of invalidity and non-infringement. Plaintiff's action charges the defendant with the infringement of Claim 6 of United States Letters Patent No. 2,524,-797, which issued on October 10, 1950 to it as the assignee of Grover B. Holtzclaw, the inventor. The patent rights are wholly owned by plaintiff.

Plaintiff is a corporation organized under the laws of Massachusetts, being engaged in the business of designing, manufacturing, and selling and installing various articles of textile machinery, and designs, manufactures and sells travelling cleaners for such machinery. It maintains a regular established place of business in Charlotte, in the Western District of North Carolina.

The defendant is an Ohio corporation and is similarly engaged in the business of designing, manufacturing and selling various types of machinery, including travelling cleaners for many textile machines. For many years it has maintained a place of business in Charlotte and does considerable business in North Carolina.

Jurisdiction arises under the patent laws of the United States.

In its answer the defendant alleges the invalidity of said Letters Patent No. 2,-524,797 issuing to the plaintiff as assignee of Holtzclaw on the grounds of anticipation, prior public knowledge, use and sale, lack of patentable invention and failure of Claim 6 of the patent to point out with particularity the invention as required by 35 U.S.C.A. § 112. It likewise denies infringement of Claim 6 of said patent.

Plaintiff has been engaged in the business of designing and manufacturing travelling cleaners for textile machines for approximately thirty years. One among the big problems involved in the manufacture of textile fabrics and yarns from cotton and other similar short staple fibers is the collection of lint which sheds rapidly during the manufacturing operations. It seems to collect on all types of textile machines, particularly spinning and weaving frames,—very often forms into bunches, frequently becomes caught in the yarns as they are being drawn, spun, wound, and woven, causing all sorts of imperfections in the yarn and spun fibers. Breaks frequently occur which makes piecing and splicing necessary, and naturally results in much damage to the product.

One among the major items in the cost of textile manufacturing is keeping textile machines, room surfaces, and material being used, as free from lint as possible. In spinning this is an important item. Prior to 1926 when the first travelling cleaner was placed on the market the cleaning of spinning frames and looms was done by hand. The lint would be wiped or brushed off by the operator or blown away by manually using some sort of compressed air gun,—a slow, tiresome and expensive operation and one that had plagued the industry since machines came into use. Around 1926 travelling cleaners running continuously on a track located above the row of textile machines such as spinning frames, winders, twisters warpers and looms, were manufactured and placed on the market. These cleaners as installed and geared up, and when in use, resulted in blowing away the accumulated lint at regular intervals.

This heralded an advance in the manufacture of cotton goods and reflected a considerable saving to the trade. These travelling cleaners were developed from year to year as man's ingenuity was put into practical effect and as new thoughts added something to the older art. Blowers operating on an overhead trackway over rows of textile machines and used

to clean them were consequently old art long before the patent in suit.

The patent of Walker, No. 1,781,142 was filed for in 1925. The Lytton patent, No. 2,011,770 was filed a year or two thereafter. These cleaners consisted of, as do all of such machines, a motor driven carriage operating on a track placed above the machine, ordinarily being affixed to the ceiling overhead, and consists of a fan, a casing therefor, and rigid outlets likewise being placed above the machines and over the heads of the operators, through which outlets air from the fan's operation was directed downwardly toward the machines. They were all right as far as they went, but each, up until the patent in suit, was limited in its cleaning and failed to operate upon many surfaces of the machine, particularly those not in a direct line of the air outlet.

A spinning frame invariably consists of at least three creel boards, as such is known in the trade,—called a bottom, a middle and a top creel board. The exhibits offered in evidence fully reflect the appearance of a spinning frame, loom, etc., and easily show the various parts of such machines. Since the air outlets were directed downwardly, each in its operation would fail to clean underneath the creel boards and in the underframe area. This resulted in the operator spending much of his time in hand cleaning the machines, which he operated.

During the years that followed many men skilled in the art of textile cleaning were continuously undertaking to devise some means for cleaning the lint from the various surfaces of such machines not cleaned by the machines of the Walker and Lytton types. These undertakings are best illustrated by the Smith patent No. 1,920,768, the three patents issuing to W. B. Hodge, numbered 2,047,558,— 2,063,873, and 2,063,874, and others issuing to Lawrence and Moore, etc. These patented devices were an improvement over the first patents, but proved ineffective, and the industry was continual-

ly on the lookout for and in need of workable improvements.

The defendant actively had a part in the efforts to bring about a solution to this cleaning problem, and through its ownership of the Miller and Becker patent, No. 2,516,475, and other types of cleaners, offered to the industry a motorized equipment operating on a track suitable for cleaning the under portion of the spinning frame. These evidently were not entirely successful and did not prove commercially competitive to the patent in suit.

Being confronted with the constant demands of textile manufacturers plaintiff's research director, George B. Holtzclaw, began a study of the problem from a practical angle and finally hit upon the idea of making use of extended air outlets which would make it possible to deliver air currents of the proper volume and needed velocity to the right places and in the proper direction. Such outlets to be made of a flexible type of material in order to yield if they should come in contact with the machine operator, or any other obstruction as the cleaner travelled on the overhead frame. The air vents on the extended flexible nozzle or sleeve would make it possible to clean any area of a spinning frame or other machine which theretofore the travelling cleaners had failed to reach, and through the flexible sleeve or nozzle the textile worker was protected from injury. Having conceived of this idea he made application for a patent on December 12, 1947 and on October 10, 1950, plaintiff, as assignee of Holtzclaw was issued the patent in suit.

Claim 6 of the patent, and this is the claim on which plaintiff bases its action, is as follows:

"6. The combination with a traveling cleaner, for blowing lint, dust, and other foreign particles from longitudinally alined machines having a trackway disposed above and longitudinally centrally of said machines, said cleaner having a motor driven carriage and fan with means operable by said motor for propelling the carriage along the trackway and for rotating said fan, and a fan casing enclosing the fan having an inlet and oppositely positioned outlet conduits, of the construction in which the said conduits present a rigid section terminating above the heads of the machine operators when standing, *and in which the said conduits at each side are provided with a cuff of highly flexible material extending therefrom toward the machines to enable currents of air produced by the fan and discharged through the cuffs to be directed against the machines and the cuffs to yield upon impingement with an operator or other obstruction in their path of travel.*"

This is a combination patent and must be dealt with as such. The requisites for a valid combination patent are set out, with a large number of citations in 40 Am.Jur. 543, No. 19;

"A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposit instrument. The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) that a combination is patentable if it produces new and useful results, although all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements; (2) if it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, and a new result is given by their union; (3) if it either forms a new machine of distinct character or formation or produces a result which is not the mere aggregate of separate contributions, but

is due to the joint and co-operating action of all the elements; (4) when the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way". City of Grafton v. Otis Elevator Co., 4 Cir., 166 F.2d 816. Colgate-Palmolive Company v. Carter Products, 4 Cir., 230 F.2d 855.

Taking up first for consideration the question of the validity of the Holtzclaw patent, one finds from Claim 6 that it discloses the combination of highly flexible cuffs many times in the evidence spoken of as sleeves, arms, or nozzles, in conjunction with a travelling cleaner of the general type exemplified by the basic claims of all of the patents offered in evidence and discussed in the briefs of the parties; the cuffs, arms, sleeves or nozzles, so called, extending downwardly below normal head level to enable currents of air to be discharged through the cuffs, and directed against the various surfaces of the machines being operated and in that means against the materials in process, in such volume and through such means as not to affect the product being manufactured and in such way as to enable the sleeve or cuff through which the air is conveyed to yield if they should come in contact with the operator of the machine or should find the path of travel obstructed. By this claim and its practical effect, Holtzclaw has evidently overcome the problem which confronted the industry for many years and has devised by his invention a means and a method to deliver air to out of line surfaces and at a correct velocity and in such volume as is found proper. The value of this invention when put into effect as a practical proposition, met a ready response from the textile industry and has been highly successful commercially.

A careful study of the record in this case unalterably leads one to the conclusion that the patent in suit is good and valid in law and represents patentable invention. The testimony heard unquestionably discloses that result. This is more easily seen and the result more nearly known when one likewise studies the various exhibits offered in evidence, and sees first hand the results that are obtained from the use of the patent in suit. The photographs convey this thought much more clearly than does the testimony; so much so that one, even though entirely unacquainted with the manufacture of textiles, can readily grasp the fine results and the great advantages that come from the Holtzclaw patent. Hardboiled textile executives and business managers of textile plants gave their testimony of the value of the improvements brought into being from the use of these machines. Evidently the textile trade was much impressed, for in 1955, the last full year before the trial, one hundred and fifty five textile plants purchased the product made by plaintiff under the patent in suit, for use in their various manufacturing plants,—thirteen hundred and ninety five units being sold by plaintiff, with the sales aggregating approximately three and one half million dollars, and, representing through such purchases a saving in labor to the mills in cleaning of an estimated one and one half million dollars that year.

The mills purchasing this product represented approximately one seventh of the textile spindles in America. So workable did this travelling cleaner with the flexible cuff become that the sales thereof amounted to approximately 96% of the travelling cleaners that were made by plaintiff.

The validity of plaintiff's patent is further strengthened by the presumptions which are in its favor arising from the grant of such by the Patent Office. This presumption of validity can only be overcome by strong proof and as Mr. Justice Cardozo strikingly said with respect to the presumption that comes from the grant of a patent, among other things, "Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a

heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance." "Again it is said 'that the presumption of the validity of a patent is such that the defense of invention by another must be established by the clearest proofs—perhaps beyond reasonable doubt' ". Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 7, 8, 55 S.Ct. 928, 931, 79 L.Ed. 163; Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 139 F.2d 633.

This presumption is additionally strengthened where the references urged against the patent were considered by the Patent Office prior to the issuance of the patent. Chesapeake & Ohio Ry. Co. v. Kaltenbach, 4 Cir., 95 F.2d 801; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433.

The Patent Office seems to have considered the Hodge patents 2,184,880 and 2,047,558, upon which the defendant relies most heavily and they evidently were found not to have disclosed Claim 6 in the Holtzclaw patent and it would appear that the other patents cited by defendant either involved essentially the same principles as those which were considered or are so remote as to be distinguishable on their face. All together defendant cited twenty five patents against the patent of plaintiff but the disclosures therein, in my opinion, do not show the Holtzclaw invention, indicating that it is possible for one some time to *have so many unmatched stones that he can't build his fence.*

Judge Parker, in Reynolds v. Whitin Mach. Works, 4 Cir., 167 F.2d 78, 83, under a somewhat similar offering, said:

"Defendant has cited 21 patents as basis for its contention that complainants' invention is lacking in novelty; and this in itself is evidence of the weakness of the contention. Such a citation of so many prior patents almost always means either that none of them is in point and that the patentee has brought together for the purpose of his invention devices to be found in prior patents of different character, or

that there have been prior attempts to solve the problem with which he was confronted which have not met with success."

Defendant's tri-rail cleaner was brought out by it in 1951 as evidenced by defendant's exhibit D; prior to that time it was engaged in making and selling the Lawrence type of cleaner which was only claimed to clean the upper portions of the spinning frame, and in addition was recommending to its customers that they install a separate under-frame cleaner, manufactured by the defendant, which would clean only one frame. This tri-rail cleaner obviously from its name, operated on three rails.

In 1954 representatives of both plaintiff and defendant sought to sell the products made by their employer to Burlington Mills, and each representative conducted a demonstration of their respective cleaners. Ultimately Burlington purchased plaintiff's cleaner, but not before it had given Mr. Kulp, Sales Engineer and District Manager at Charlotte, for the defendant, the opportunity of determining whether or not the defendant could manufacture and install on its tri-rail cleaner flexible cuffs or sleeves much alike the cuffs made by the plaintiff and serving the same purpose. This was done at defendant's manufacturing plant in Cleveland, and on delivery such flexible cuffs were attached, and defendant again demonstrated its tri-rail cleaner to the Burlington officials. However a sale was not effected.

Plaintiff's exhibit 10 and 11 are indicative of the tri-rail cleaner of the defendant with its conception of the flexible cuffs attached, as demonstrated to Burlington and later offered for sale to textile mills generally.

In December 1954 the defendant made and sold and installed certain travelling cleaners which were within the scope of Claim 6 in the patent as is best illustrated by plaintiff's exhibits 10 and 11, and following such sales of its manufactured articles, the defendant has continued to manufacture and sell and to offer for sale, such similar devices as are further indicated by plaintiff's exhibits

19 and 20, and others of the exhibits offered at the trial. These appliances manufactured and sold by the defendant are clearly an infringement of plaintiff's patent.

I am of the opinion, therefore, that Claim 6 of the Holtzclaw patent, No. 2,524,797 is good and is legally valid.

The defendant has infringed Claim 6 of the Holtzclaw patent by manufacturing and selling, and offering for sale and installing for operation the devices illustrated by plaintiff's exhibits 10, 11, 19, 20 and other exhibits as well as some of the exhibits of the defendant.

That plaintiff is entitled to an injunction perpetually enjoining and restraining the defendant during the life of the patent from either directly or indirectly infringing upon Claim 6.

And further, that plaintiff is entitled to recover damages for the infringed acts proximately flowing therefrom, together with the costs of the case.

Counsel will accordingly submit decree.