David H. KEISER, Jr., d/b/a the Keiser Manufacturing Co., Plaintiff,

v.

HIGH POINT HARDWARE COMPANY, Defendant.

No. C-95-G-58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Nov. 30, 1961.

Armistead W. Sapp, Greensboro, N. C., and Paul & Paul, Philadelphia, Pa., for plaintiff.

Horace S. Haworth, High Point, N. C., and Slough & Slough, Cleveland, Ohio, for defendant.

PREYER, District Judge.

This is a suit to restrain the defendant from infringement of Keiser Patent No. 2,407,237, dated September 10, 1946. The usual defenses are alleged. While High Point Hardware Company is the defendant named as the seller of the accused device, True Temper Corporation is its manufacturer. The plaintiff seeks

to have True Temper Corporation bound by the judgment of the Court.

The patent in suit relates to grass shears or hedge shears which are characterized by a pivotal connection involving a pair of pivots, one of which forms a bearing for the horizontal opening and closing shearing movement of the blades, and the other of which is a separate transverse pivot and forms a bearing for one of the blades to swing independently at right angles to its shearing movement. Prior to World War II, various shears had been utilized for the purpose of cutting grass and hedges, most of these shears having a pair of movable blades bolted tightly together by a single nut and screw. Such shears were not only difficult to operate but also were subject to excessive wear from the grinding action of the blades.

The plaintiff himself introduced an easier-working pair of shears which he produced under his patent No. 2,281,977, granted May 5, 1942. The easy-working qualities of these shears were obtained by mounting the blades very loosely on a single high pivot which would allow some vertical tilting to the blades which served to alleviate the tight or grinding action of the blades. But shears manufactured under that patent possessed disadvantages, including excessive wear at the pivot bearings because of the loose fit, difficulty and high cost of assembly at the plant because of the need of skilled labor to make the adjustment at the pivot, and commercial unattractiveness due to the loose and "sloppy" fit of the blades.

The plaintiff, under the patent in suit, overcame these difficulties by embodying the use of twin-pivots, mounted transversely to each other. Such shears could be assembled by unskilled labor and had better wearing qualities due to the tight fit at the pivots, were more easy working, and commercially more attractive.

The plaintiff's present patent claim, then, describes two pivotal elements. Specifically, claim 6 of the patent, which is relied upon in this litigation, reads as follows: "A pivotal connection for a pair of shear blades comprising a pivot forming a bearing for a cooperative flat-wise opening and closing movements of said blades, and a separate transverse pivot forming a bearing for one of said blades for independent swing thereof at right angles to its shearing movement."

## Prior Art

The defendant argues that the plaintiff's patent in suit is lacking in patentable novelty. To this end it introduced at the trial 22 patents. The prior art primarily relied upon by the defendant is Keiser (the plaintiff) 2,281,977, dated May 5, 1942; Ginnell 1,562,630, dated November 24, 1925; and Simonson 1,987,375 dated January 8, 1935.

A study of these patents indicates that in none of them is there any vertical movement of the shear blades except by the yielding movement occasioned by the loose fit of the blades about the pivot. Vertical movement of the blades is obtained simply by the loose connection of the blades. None teaches the use of a transverse pivot as the means of obtaining vertical movement of the blades for easier cutting. There is no combination of two pivots, one mounted transversely to the other as in the patent in suit, in any of the prior art.

Defendant's experts stated that the most nearly anticipatory prior art is the earlier Keiser patent 2,281,977. We conclude, however, that the patent in suit, Keiser 2,407,237, constitutes an invention over the earlier patent. The addition of the transverse pivot is something new to the art and is not the normal and obvious result of skill and experience gained in the practice of the earlier invention. In this connection, we note that Keiser 2,281,977 was brought to the attention of the Patent Office at the time the patent in suit was determined to be patentable. The Patent Office did not cite it or any other prior art. This strengthens the statutory presumption of validity. Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 4. Cir., 269 F.2d 600, 604 (19.9). Also, we take note that plaintiff's device has en-

joyed commercial success. While not determinative of either invention or validity, it is a factor entitled to consideration. S. H. Kress & Co. v. Aghnides, 4 Cir., 246 F.2d 718 (1957). In a comparatively short time, the sales of the plaintiff's twin-pivot shears were such that these shears became the principal product of plaintiff's company, and other companies became interested in producing shears of a similar type. Among such other companies is Seymour Smith & Sons, Inc., of Oakville, Connecticut, which company was granted a license under the patent in suit and paid royalties for the use thereof.

■ We conclude that there is nothing in the prior art that suggests or teaches the subject patent's twin pivot construction, and that such a construction was not obvious to one possessing ordinary skill in the art before Keiser No. 2,407,237. The plaintiff's patent is valid.

### Infringement

The infringement charge is directed against True Temper #22 Shears. These shears employ a draw-cut slicing compound movement which is achieved by pivoting a blade support for a movable blade on a movable handle, pivoting the blade supported thereby about a pivot pin disposed in the nose of this blade support, linking an ear of the blade to a downwardly extending lever arm of the movable handle and upon the pivoting of the movable handle about a fixed handle. The movable blade is not secured to the fixed blade, as in the plaintiff's patent. The blade support moves upwardly and rearwardly during the shearing movement, achieving a draw-cut slicing action of the movable blade.

Defendant contends that the action of the True Temper Shears is substantially different from that of plaintiff's shears. Defendant argues that claim 6 of the patent in suit cannot be read on the accused structure because there is not "cooperative flat-wise opening and closing movements of said blades" in the accused shears—not "cooperative" because one blade is fixed and both blades must move

to be "cooperative"; not "flat-wise" because the movable blade of the True Temper shears moves in a curved rising and backward manner and not in a flat plane.

Defendant also contends that there is no "pivotal connection for a pair of blades" since there is no pivot connecting the blades directly to each other.

■ While the construction of the True Temper shears may be somewhat different from that of the Keiser shears, the same parts are present. In the True Temper shears, one yoke pivot structure permits vertical movement of the blades, while another pivot structure at right angles to the first permits horizontal movement. Vertical and horizontal movements of the blades are made possible through two pivots, one transverse to the other. The same structure of the Keiser shears is included in the True Temper shears, although the latter structure may not be limited to the elements of the Keiser shears. In determining the question of infringement, the triers of facts are "not to judge about similarities or differences by the names of things but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same results, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result." Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1877); Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587, 593 (1944). "Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Curtis, Patents (4th Ed.), sec.

310, quoted in Saco-Lowell Shops v. Reynolds, supra.

■ Viewing the demonstrations performed in court, the testimony of the expert witnesses, and the patent and specifications in the light of these principles, we conclude that there is a substantial identity between the True Temper shears and plaintiff's patent, constituting infringement. While there is slightly more of a rising action to the movement of the True Temper movable blade, the movement remains "flat-wise"; i. e., there is a substantially parallel movement of the blades with respect to each other while in a flat relationship to each other in the same plane. There is nothing in the file history of the patent in suit which would require a more restricted meaning of "flat-wise" other than general English usage. In our opinion such usage requires a substantial, but not an absolute, parallelism in the movement of the blades.[1] Nor does the "draw-cut" feature of the True Temper shears prevent the movement of the blades from being "flat-wise"; it connotes that the movable blade *also* moves rearward as a supplemental action to the flat-wise action—the drawing action takes place simultaneously with the flat-wise action. We find that the draw-cut feature is an addition to the plaintiff's patent but is not a departure from the basic elements of the patent. A patent may be infringed even though something may have been added in the accused device to the basic elements of the patent. Aluminum Company of America v. Sperry Products, Inc., 6 Cir., 285 F.2d 911, 923 (1960); Walker on Patents, Dellers Edition, 1937, Vol. 3, 460 pp. 1693–1695. "This is true even where the added device facilitates the working of one of the parts of the patented combination, and thus makes the latter perform its function with more excellence and greater speed." Walker on Patents, supra, p. 1694. We find that every essential element of combination, or its equivalent, is embodied in the antagonist device.[2]

1. Defendant's expert testified that the movable blade of plaintiff's shears also rises up during the shearing movement but that the True Temper shear blades rise approximately 3/16 of an inch while the plaintiff's shear blades rise approximately 1/16 of an inch.

2. As to defendant's contention that "cooperative" imports a simultaneous movement of both blades rather than the action of one movable blade relative to a fixed blade, we note that plaintiff's patent claim showed two different types of shears, one of which displays a fixed blade and a movable blade, and one a shear that acts like scissors in which both blades move. We conclude that "cooperative" as used in the patent claim was intended to, and does, cover the movement of one blade at right angles to the other irrespective of whether both blades are movable or one is fixed. The failure of the Patent Examiner to cite any prior art indicates that it was unnecessary for the applicant to restrict his claims to one of the specific forms of shears shown in the drawings. In the absence of any such compelling factor, the claim should be read as covering both forms of the invention, particularly when it is considered that the patent claim should be construed in the light of the specification and drawings of the patent. Long Manufacturing Company v. Holliday, 4 Cir., 246 F.2d 95, 99 (1957); City of Grafton v. Otis Elevator Co., 4 Cir., 166 F.2d 816, 819 (1948); Hutzler Bros. Co. v. Sales Affiliates, 4 Cir., 164 F.2d 260, 263 (1947). Furthermore, we should not lose sight of the fact in the thicket of scientific terminology that the object of the invention and the accused device is to cut grass. The man skilled in the art or the person cutting grass on Saturday afternoon knows that it is essential to have two blades working together at the time of the cut to accomplish this object. To one interested in cutting grass the term "cooperative" signifies that the two blades help each other in achieving the purpose, and that what happens to the blade after the cut—whether they move upward or rearward—is of no efficacy.

Defendant also contends that "pivotal connection" must be read as requiring a direct connection between the two blades, or a common pivot for both blades. But it seems clear that, read in the context of the claim, "pivotal connection" means the entire structure of the two pivots.

It has long been the practice of this court to issue injunctions against manufacturers who openly and avowedly defend patent suits against dealers in the infringing article. Redman v. Stedman Manufacturing Company, 181 F.Supp. 5 (M.D.N.C.1960) (where the cases are reviewed at length); Davis Company v. Baker-Cammack Hosiery Mills, 86 F. Supp. 180, affirmed 4 Cir., 181 F.2d 550 (1950); Aghnides v. S. H. Kress & Co., 140 F.Supp. 582, affirmed 4 Cir., 246 F.2d 718 (1957); Redman v. Stedman Manufacturing Company, 154 F.Supp. 378, affirmed 4 Cir., 257 F.2d 867 (1958). We would pursue that course in the instant case but we are of the opinion that we are powerless to do so in view of the recent case of Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961). In Schnell, the Supreme Court held that control of the defense in a patent infringement suit does not constitute waiver of venue. The petitioner had brought suit against the user of an allegedly infringing device and had sought, before trial, to join the manufacturer, who had openly assumed control of the defense pursuant to an indemnity contract with the named defendant. The district court denied Schnell's motion to join, and the Court of Appeals, 7 Cir., 279 F.2d 594, affirmed on the ground that under section 1400(b) of the Judicial Code, 28 U.S.C.A. venue was improper and had not been waived. On certiorari the Supreme Court affirmed.

■ While there are procedural differences between the present case and Schnell v. Peter Eckrich & Sons, Inc., supra, we understand that case to mean that the Supreme Court has adopted a restricted interpretation of the patent venue statute which is inconsistent with that heretofore adopted in the Fourth Circuit.[3] Specifically, as applied to the present case, we read Schnell v. Eckrich, supra, to mean that True Temper by any assumption and control of the defense of High Point Hardware Company has not submitted itself to the jurisdiction of this court. As a result we hold that no damages claimed for unfair competition can be adjudicated against it.

■ It is clear, however, that True Temper, if it openly controlled the defense of the suit for High Point Hardware, would be subject to the ultimate application of res judicata, and would be bound by the final judgment and precluded from relitigating the same issues of validity and infringement. Schnell v. Peter Eckrich & Sons, Inc., supra; Souffront v. La Compagnie des Sucreries De Porto Rico, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846; Baltz v. Walgreen Co. D.C., 198 F.Supp. 22 (1961); Restatement, Judgments, Section 84, Illustration 4. In the present case we find that True Temper is so bound. The evidence indicates that True Temper has financed the suit, and that Miss Slough, who largely conducted the trial of the case for the defense, is the patent attorney for True Temper in Ohio. It is stipulated that High Point Hardware Company has sold only 29 of the accused devices and at the price of approximately $3 each, and the evidence shows none sold since the filing of this suit. It clearly has no substantial pecuniary interest in the case, and it strains credulity to believe that it has offered any real defense in the case. True Temper, on the contrary, has a large proprietary and financial interest in the judgment and in the determination of the question of fact and law involved. It seeks to have plaintiff's patent declared invalid, and is in court for the purpose of passing on the validity of the patent and its infringement. We find that it managed and directed the progress of the trial at its expense and under its supervision; that it has litigated the two questions of the validity of the patent and its infringement, and that the outcome, which if favorable would have re-

3. See the discussion of Schnell in 75 Harvard Law Review 177.

·dounded to its benefit, being adverse is binding under the principles of *res judi-cata*.

The foregoing opinion was written by Judge PREYER and concurred in by Judge HAYES.